85 So.2d 717 (1956)
Pearly RICHMOND
v.
NEW AMSTERDAM CASUALTY COMPANY.
No. 20650.
Court of Appeal of Louisiana, Orleans.
March 5, 1956.
Frank S. Bruno, New Orleans, for plaintiff and appellant.
Henriques & Mayo, New Orleans, for defendant and appellee.
McBRIDE, Judge.
This is a suit for compensation filed by Pearly Richmond against New Amsterdam Casualty Company which is the compensation liability insurer of the employer. Richmond claims that as the result of an accident on February 11, 1954, while in the course and scope of his employment with Gervais F. Favrot Co., Inc., he was rendered totally and permanently disabled from doing work of any reasonable character and prays for 393 weeks' compensation (7 weeks were paid by defendant) at the rate of $30 per week.
Defendant admits plaintiff was hurt on the job in an accident on the date alleged which happened when he was pulling on a wooden form which suddenly gave way and knocked him partly off the ledge of the building on which he was working, but makes the defense that plaintiff was treated for his injuries by defendant's physicians who pronounced him physically able to return to the duties of his occupation and discharged him on March 29, 1954, and that *718 all compensation due up to said date was paid and plaintiff is not entitled to any further compensation.
The matter comes before us on plaintiff's appeal from the judgment below dismissing the suit.
Richmond continued to work the rest of the day after the accident and did not complain of pain or inability to continue his duties until the following day, February 12, 1954, at which time he was sent to the office of Drs. Harrison, Lyons, Baker & Paine. On his first visit there, Richmond was seen and examined by Dr. Baker, and on subsequent occasions he was treated by Dr. Baker three times, by Dr. Lyons four times, and by Dr. Paine on five occasions, the last time being March 24, 1954, when Dr. Paine discharged him from further treatment and gave him a slip to return to work on March 29, the following Monday.
It appears from the evidence that on plaintiff's initial visit to Drs. Harrison, Lyons, Baker & Paine, he was complaining of his upper back and right knee and was treated therefor, but beginning on February 22, when the doctors thought he had recovered from the effects of the upperback complaints, plaintiff for the first time commenced making complaints of lower back pains and thereafter his knee and lower back were treated through March 24 when he received the medical discharge from Dr. Paine.
Dr. Paine stated that it was and is his opinion that Richmond did not need any additional treatment, hence the discharge. He testified in answer to a question propounded by the court that the X-rays showed minimal hypertrophic changes in certain lumbar vertebrae, but he stated this condition could not have been caused by the trauma of February 11. He thought the arthritis predated the accident explaining that it takes a considerable time for arthritis, which is a slow process occurring over a period of years, to show on an X-ray. Dr. Paine's opinion was that the arthritic condition could not have developed between February 11 and 22, a period of only 11 days, nor could the trauma have aggravated any pre-existing condition.
The treatments administered by Drs. Harrison, Lyons, Baker & Paine consisted of immobilization of the back, infrared therapy and diathermy and plaintiff was instructed as to heat treatments he should render to himself at home and as to certain exercises he was advised to take.
At no time after March 10 was Dr. Paine able to find objective symptoms or any reason for continued disability and he advised Richmond that he would be sent back to work. Richmond, according to Dr. Paine, seemed to demur, so Dr. Paine decided to send him to see Dr. Lyon K. Loomis, an orthopedic specialist, for the purpose of examination. This examination was made on March 15, 1954, and Dr. Loomis found no objective evidence of an injury to the lower back or right knee which could properly be attributed to the accident of February 11. Dr. Loomis saw no further treatment to recommend and it was his opinion that Richmond could be returned to his regular duties. The X-rays showed only the old arthritic condition all previous X-rays had shown. Dr. Loomis particularly noted, however, that Richmond had flat feet and faulty posture and his thought was that these were causing Richmond's pain. Dr. Loomis made another examination on October 1, 1954, and the X-rays then taken essentially showed what the previous X-rays had disclosed. There was no evidence of an injury and Dr. Loomis stated that if Richmond did have the pains of which he complained, they could have been caused by the faulty posture and flat feet. He said: "I know of nothing that causes low back pain any more often than those things."
At the time of his discharge by defendant's doctors, Gervais F. Favrot Co., Inc., had Richmond's old job waiting for him, but Richmond would not attempt to return to his former occupation, and apparently the only time that he ever endeavored to do anything, according to his testimony, was after he went to Mississippi when he assisted *719 his wife around the farm and picked some cotton.
Richmond professed that notwithstanding his discharge by Dr. Paine, his back and both legs continued to hurt him which forced him to see Dr. William Fisher several times.
Dr. Fisher, who is a general practitioner of medicine, first saw plaintiff on March 29, 1954, and on the basis of the history of the case, a physical examination, and X-rays, his diagnosis was that there was an injury in the lumbosacral region and also an injury to the lower medial third of the right thigh. Dr. Fisher's X-rays showed the marked hypertrophic arthritis of the lumbosacral vertebrae. His recommendation was "good physiotherapy treatment." Dr. Fisher also saw plaintiff on May 1, 5, 10, 14, July 11, 21 and December 14, 1954, and March 7, 1955, which was the day before the trial, and his findings on all occasions were the same as on March 29. His opinion is that Richmond is incapable of returning to work. He states that he did not render physiotherapy because he is not equipped to do so and that plaintiff's several visits to him were for the purpose of observation only. We notice that Dr. Fisher made one significant remark: "As far as being able to accurately determine the degree of pain that this man was expressing, I would say that it was depended upon what he had to say primarily and what he felt."
Dr. Loomis made some comment on Richmond's complaints of pain saying they were not compatible with his findings. He told of placing Richmond on a table and of having him turn over from prone to supine and from supine to prone position which maneuvers were made without complaint of pain. Had there been pain, Dr. Loomis said Richmond would have given expression to that fact.
Plaintiff's counsel attaches much importance to the circumstance that before discharging Richmond on March 24, Dr. Paine gave him an infrared treatment, and the argument is advanced that this indicates that Dr. Paine prematurely discharged plaintiff who needed the physiotherapy spoken of by Dr. Fisher.
When asked about this, Dr. Paine went on to explain that he was unable to find any objective symptoms for Richmond's professed continued disability and that the infrared treatment was psychotherapy rather than something of actual therapeutic value.
Be that as it may, after reading the record as a whole, we believe that if the plaintiff, a man 60 years old, has any disability it is not referable to any injuries received in the accident, but, on the contrary, flows from the pre-existing arthritic condition and perhaps also from the flat feet and bad posture which Dr. Loomis said might cause him trouble. To reverse the judgment and decide this case in plaintiff's favor would require that we disregard entirely the testimony of defendant's two physicians and accept as the basis of a judgment for plaintiff the testimony given by Dr. Fisher who is a general practitioner and who merely observed plaintiff.
Our thought is that the testimony of Dr. Loomis, who is an experienced orthopedic specialist, is entitled to be given more weight than a physician who is not a specialist in said medical field, and furthermore the testimony of a physician first examining an injured person is usually accorded greater weight than the testimony of one more remotely removed therefrom. See Price v. T. L. James & Co., Inc., La. App., 53 So.2d 182; Henderson v. New Amsterdam Casualty Co., La.App., 80 So.2d 438; Roy v. Guillot, La.App., 84 So.2d 469.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.