88 So.2d 30

Woodrow H. BEAN

v.

HIGGINS, Inc. and Columbia Casualty Company.

Nos. 42361, 42368.

May 7, 1956.

Walter M. Barnett, Cicero C. Sessions, John W. Read, New Orleans, Montgomery, Barnett, Brown, Sessions & Read, New Orleans, of counsel, for defendants-appellants.

Claude F. Kammer, New Orleans, for plaintiff-appellant.

MOISE, Justice.

In the exercise of our supervisory control, Article VII, § 11, Constitution of 1921, LSA, we granted writs to review a judgment of the Court of Appeal for the Parish of Orleans, which affirmed the judgment of the District Court awarding compensation to plaintiff for permanent partial disability, in the sum of $19.67¼ per week (65% of the difference between plaintiff's regular wage of $55.27 per week and $25 per week he is now able to earn)—the payments not to exceed 300 weeks—all of which would be subject to certain enumerated credits.

Plaintiff contends that there was error in the award made, because he sustained total permanent disability.

The defendant employer and its insurer contend that the award should be limited and restricted to the benefits provided for in Section (4) (e) of LSA–Revised Statutes 23:1221.

On September 18, 1953, plaintiff was working at Higgins, Inc., as a welder's helper. At the time he sustained his injuries, he was performing services in the scope of his employment. He had to get on a ladder in an effort to turn off the cooling mechanism of a welding machine. To do this he used his right hand. The fan of the mechanism struck that hand, resulting in extensive lacerations, contusions and abrasions, with amputation at the junction of the proximal and middle third of the middle phalanx of the middle or third finger, and extensive lacerations, contusions and abrasions of the ring or fourth finger. There is shown, as a fact of record, that plaintiff had previously suffered disability in his fifth or little finger. It would now appear that the only undamaged fingers on his right hand (and he is right handed) are the thumb and the index finger.

Defendants contend that plaintiff has completely recovered, and that he was paid compensation during the period of his disability to work. In the alternative, they contend that plaintiff should only receive 7% of 65% of his weekly wages for a period of 150 weeks, Section (4) (e) of LSA–Revised Statutes 23:1221, and this to apply only in the event that he is still disabled.

Plaintiff is forty-five years of age, and he is the father of six children, who depend on him for support. At the time of the trial, he was suffering considerable pain in several fingers.

It is shown, as a fact, that he tried to rehabilitate and establish himself by actually working, and that, therefore, he is not a malingerer. He was employed in several positions, and he claims that he was unable to properly perform the work because of his physical disability. The President of the Arrow Trucking Service testified that plaintiff worked for that company as a car washer since the accident, but that because of his physical disability it was most difficult for him to perform the work. Plaintiff thereafter obtained employment in lifting, hauling and truck driving for Solari's Store in New Orleans, for which he was paid a weekly wage of $25. He claims that because his fingers were constantly being knocked and hit and not being able to use the fingers on his right hand as before the accident, he lost his position.

This injured hand showed callouses. Dr. Irwin Cahen, defendants' medical expert witness, was asked this question:

"Does it appear from the nature of the callouses which you have observed that he has done recent laborer's work?"

He replied: "Yes."

To the unbiased mind this should show that plaintiff was working hard and that he was making an effort to earn a living, because these callouses appear on his injured hand.

Although Dr. Daniel C. Riordan, another medical expert witness for defendants, stated that work would improve the condition of plaintiff's injured hand, he testified that it was in a worse condition than before plaintiff performed work with it.

Dr. Blaise Salatich testified that plaintiff had a neuromata. A neuromata causes pain. Dr. Salatich was of the opinion that an operation would be necessary to ease the pain, but that such an operation would not enable plaintiff to perform the same duties he did before the accident.

Medical testimony, as to whether a future operation on plaintiff's hand is necessary, is purely speculative.

It is true that the defendant employer and its insurer had a majority of medical experts. Mere numerical numbers of experts is not sufficient for a determina-

tion of a decision in any case. We must take the overall picture of all the facts and circumstances, and more particularly the physical facts demonstrated in the record. The physical fact of an experiment in open court should be persuasive, because plaintiff could not even pick up a book with the injured hand.

█ Our Learned Brothers of the District Court and the Court of Appeal determined that plaintiff's disability, although permanent, was only partial. We have studied the record and disagree with their findings. We have concluded that plaintiff is permanently totally disabled.

"* * * The test of total and permanent disability is whether the injured employee is capable of performing the work or the occupation in which he was engaged at the time of injury or whether he is able to do the kind of work he is trained to do or customarily does in the usual and customary way and without any serious impairment of his capacity to perform such work. * * *" Reeve v. Clement-Braswell Machine & Fabricating Works, La.App., 66 So.2d 387, 390. See, also, Fruge v. Pacific Employers Ins. Co., La.App., 71 So.2d 625; Id., 226 La. 530, 76 So.2d 719; Morgan v. American Bitumuls Co., 217 La. 968, 47 So.2d 739; Wright v. National Surety Corp., 221 La. 486, 59 So.2d 695.

A welder's helper is not as skilled as a welder, but his work is of a dangerous

character, and he receives compensable wages. There is no doubt that plaintiff will never be able to resume the work of a welder's helper—the occupation he was engaged in at the time of his injury. If a welder's helper is not a skilled worker and his work can be classified as only one phase of common or manual labor, plaintiff is unable—as shown by the evidence—to perform heavy manual labor.

The testimony is clear that plaintiff suffers considerable pain in the severed digit, and that hitting and knocking it increases his distress. In the case of Coon v. Germany Iron Works, La.App., 81 So.2d 83, 85, it was ably stated:

"* * * With the pronouncements of those cases and with that in Carlino v. United States Fidelity & Guaranty Co., 196 La. 400, 199 So. 228, to the effect that a workman is deemed totally disabled within the meaning of the Statute where a resumption of work following an injury causes great pain and suffering, we are in full accord. * * *"

It follows that whether plaintiff was a skilled laborer or a manual laborer, he is now permanently and totally disabled to do work of any reasonable character.

█ We are convinced that plaintiff's total disability is permanent. But, should there be recovery, defendants would be entitled to an action for termination of

compensation payments. Johnson v. Lone Star Cement Corp., La.App., 51 So.2d 658.

█ We feel that cases of the nature and character of the present one have some exceptions to the general rule of decided cases. The statute being purely humanitarian in nature, we should take into consideration the philosophical background of the law, because in so many instances that is the reason that induced the Legislature to adopt it. The historical background of the Workmen's Compensation Law is set out in the case of Herring v. Hercules Powder Co., 222 La. 162, 62 So.2d 260, 261, which reads:

"Historical Background: The Workmen's Compensation Law originated in Germany. From Germany the law infiltrated into France, from France into England and from England into the United States of America. A German industrialist calculated that he had to include the cost of repair and replacement of his industrial machines in connection with his industrial operations, and that a necessary part of such operations were his employees, who, while performing services, were often injured, sometimes beyond repair or replacement. In his calculations, he discovered that he had made no provision for the repair or replacement of these human machines. Thereupon, he conceived the idea that he would apply the same rule as to cost of industrial machines to the human machine, and thusly, the Workmen's Compensation Law came into being. The Law—Act No. 20—was born in Louisiana in 1914."

In the decision of workmen's compensation cases, each case must depend on its own peculiar facts, and from these facts as related we should apply what is prescribed in the statute. Therefore, we cannot be bound by isolated fragments of jurisprudence considered separate and apart from the circumstances of fact which evoke them. On the facts, as applied to a liberal construction of the law, the case must stand or fall. We should not be bound by previous dicta of decided cases which relate in a general way to the issues at hand. The facts may be different. The utterings of courts of appellate jurisdiction in these cases are not sacrosanct; rather, we are obliged to weigh them in the light of all facts and circumstances, taking into consideration the history of the legislation—a matter which in most probability induces the Legislature to pass the law.

The writs are made peremptory; the judgment of the Court of Appeal, affirming the judgment of the District Court, is amended so as to allow plaintiff permanent total disability (65% of his wages during the period of his disability, for a period not beyond 400 weeks) less enumerated credits. Defendants are to pay all costs.

McCALEB, J., concurs in the decree.