HARDY, Judge.
Plaintiff instituted this suit for compensation as for permanent total disability and an allowance for future medical expenses. From a judgment awarding him compensation as for partial disability at the rate of $10.00 per week for a total period of three hundred weeks, the plaintiff appealed.
There is no question as to the occurrence of the accident and the nature of the .resulting injury. The sole issue tendered relates to plaintiff’s contention that the judgment of the trial court is manifestly erroneous in failing to award compensation as for total permanent disability.
Plaintiff, a forty-four year old manual laborer, was injured by a falling tree while engaged in the operations of cutting and loading of pulpwood in the employ of defendant on March 4, 1957. Immediately following the accident plaintiff was .removed to the Mosley Clinic at Winnfield, where he was given emergency treatment. On March 6, 1957, plaintiff was examined by Dr. Alfons R. Altenberg of Monroe, a specialist in orthopedic surgery, who diagnosed the injury as a comminuted inter-trochanteric fracture of the left hip, and performed an open reduction of the fracture, comprehending the insertion of a Jewett type nail plate held by four screws. Plaintiff continued to be totally disabled and compensation was paid for a period of one hundred three (103) weeks, after which time it was discontinued on the ground that plaintiff had fully recovered and was able to return to his employment. In or about the month of February or March, 1959, plaintiff procured employment as a log peeler at a wage substantially less than the amount which he was earning at the time of the accidental injury. ■ This work did not require the strenuous physical exertion attendant upon logging operations.
The medical testimony on behalf of plaintiff was tendered by Drs. W. H. Pierson and James V. Kaufman, general practitioners, and Dr. Ford J. Macpherson, a specialist in orthopedic surgery. The record contains on behalf of defendant the testimony of Dr. McElwee, a general practitioner; Dr. Carson R. Reed, Jr., a specialist in orthopedic surgery, and the written reports of Dr. Altenberg.
The written opinion of the district judge discloses his conclusion that there was no medical evidence of pain, and that the percentages of disability as opined by Dr. Macpherson and Dr. Altenberg were not substantial. The opinion correctly stated the important factor of the case as being the question as to whether plaintiff can work without undue pain.
After thorough consideration of the record we are of the opinion that the factual findings of the district judge as to pain and disability are erroneous. This finding necessitates a, somewhat detailed discussion of the medical testimony.
We disregard as without weight or value the testimony of Dr. McElwee, by reason of the fact that his last examination of plaintiff was made less than two months following the accident and he did not attempt to express any opinion as to the degree of disability from which plaintiff suffered, or the extent of his recovery. The last of Dr. Altenberg’s several written reports on plaintiff’s condition was given following examination on November 5, 1957, and the doctor expressed the opinion that plaintiff had suffered a permanent partial disability of his leg estimated at ten per cent; that although from an “orthopedic standpoint” the patient could be discharged, he still had a mild weakness in his leg, which would always have an occasional soreness.
*602 The deposition of Dr. Reed established the date of his last examination of plaintiff as being July 15, 1958, at which time the fracture was not healed, and it was his opinion that — "* * * further surgery will be necessary. Patient may continue to work at his regular occupation. Probably another six months will be required for complete bony union to take place” On cross examination the witness admitted that he did not think it advisable for plaintiff to undertake heavy lifting.
In support of plaintiff’s claim of permanent total disability it is pointed out that Dr. Pierson made an examination on Octo'ber 1, 1959, at which time he estimated plaintiff’s disability as being twenty-five per cent less than his normal capacity; that Dr. Kaufman, who examined plaintiff prior to trial, but did not give the exact date thereof, estimated plaintiff’s disability at seventy per cent, as far as woods work was concerned; and Dr. Macpherson fixed his disability at five per cent with relation to the injured hip.
It must be noted in attempting to evaluate the respective weight to be accorded the testimony of the several medical experts, that the last examinations by physicians who testified on behalf of defendant were made at periods varying from more than two years to fifteen months prior to the date of trial, which was had October 27, 1959. We seriously question the desirability of reliance upon estimates, evaluations of disability and prognoses made at times when, concededly, plaintiff was still totally disabled and on occasions so far removed from the date of trial.
The testimony of the medical witnesses on behalf of plaintiff shows that the last examinations of these medical experts were made within a period from one to slightly more than two months prior to trial, and, for this reason, we think they should be accorded substantially greater weight and value.
The opinion of the district judge interpreted the testimony of Dr. Macpherson as “conclusively” showing that plaintiff could return to work without pain but not without some discomfort. Our examination of Dr. Macpherson’s testimony does not accord with this interpretation, for he testified that as of the date of his last examination of September 15, 1959, he felt that plaintiff should have shown greater improvement; that in his opinion plaintiff would suffer discomfort, fatigue, some pain, and aches in the leg, and would otherwise be handicapped in the performance of his duties if he attempted to return to his occupation of cutting and loading pulpwood. This witness was most emphatic in his assertion that plaintiff was absolutely not a malingerer and that he “ * * * never made a false move during any of his examinations.”
We think the lay testimony fully justifies the conclusion that plaintiff’s disability as it existed at the time of trial would prove to be a serious handicap in woods work. It was observed that plaintiff had a slight limp, a tendency to drag his left leg, and, according to his testimony, the injured leg would not support the sudden shift of the weight of his body caused, for example, by stumbling or by walking over uneven surfaces.
As the result of our consideration we are unable to agree with the conclusion of the district judge that plaintiff was able to return to work without pain. While even the testimony of plaintiff does not indicate any substantial degree of continuous pain, all of the testimony, both lay and medical, establishes the fact that plaintiff would suffer from serious fatigue and considerable “discomfort”. We think the expression “discomfort” must be construed as being synonymous with pain; and we find no reason to doubt the elements of fatigue and the attendant handicap under which plaintiff would be required to labor if he returned or attempted to return, to his former employment. Unquestionably, he would be subjected to increased dangers and hazards in thé course of such employment by reason *603 of his inability to quickly move from positions of danger occasioned by falling trees, limbs, etc., which are customary and expected occurrences in logging operations.
We think this conclusion is in line with the principle announced in Brannon v. Zurich General Accident & Liability Insurance Co., 224 La. 161, 69 So.2d 1, and the numerous subsequent decisions of all of the appellate courts of our State to the same effect. We particularly refer to Porter v. New Amsterdam Casualty Company, La.App., 99 So.2d 478, 481, in which “unusual difficulty or pain” was considered a test of ability to perform manual labor, and in which pain and discomfort were considered as synonymous terms, citing Strickland v. W. Horace Williams Co., 5 Cir., 230 F.2d 793, certiorari denied, 352 U.S. 852, 77 S.Ct. 75, 1 L.Ed.2d 63. Also see Washington v. Independence Oak Flooring Company, La.App., 114 So.2d 599; Cummings v. Albert, La.App., 86 So.2d 727.
The instant case differs from the situation presented in Morgan v. American Bitumuls Company, 217 La. 968, 47 So.2d 739, in that the facts disclosed in the cited case showed that the injured laborer returned to his same trade and occupation, although at a lesser wage. In the instant case, as we have above noted, plaintiff has not returned to the same or a similar kind and nature of employment, nor, indeed, do we believe that the record justifies the conclusion he could have done so without pain, discomfort, hardship and danger.
As to the medical evaluations which fix what seem to be minimal percentages of disability, the rule is now well understood that an estimate of a percentage disability is not necessarily a true measure of the effect of such disability; cf., Malone Louisiana Workmen’s Compensation, Section 278, page 97, 1960 Supplement, citing Strother v. Standard Accident Insurance Company, La.App., 63 So.2d 484, and Watson v. Floyd Electric Company, La.App., 75 So.2d 361.
For the reasons assigned we conclude that the judgment appealed from is erroneous and that plaintiff is entitled to an allowance as for permanent total disability.
We find no ground for the allowance of penalties and attorney’s fees urged on behalf of plaintiff.
For the reasons assigned the judgment appealed from is amended by decreeing plaintiff to be entitled to compensation as for total permanent disability at the rate of thirty-five dollars ($35.00) per week for a period not exceeding four hundred weeks from date of March 4, 1957, and as amended, the judgment appealed from is affirmed at appellee’s cost.