AYRES, Judge.
Defendants appeal from a judgment awarding plaintiff workmen’s compensation as for total and permanent disability.
The sole issue presented is factual in nature and relates to the character and extent of plaintiff’s disability. The'defendants complain that the trial court erred in concluding plaintiff was .suffering disability, or that such disability was permanent and total, and contend, in any event, that plaintiff is only partially disabled, and that, as a consequence, compensation should be awarded on that basis.
Plaintiff was, at the time he received accidental injuries July 26, 1958, in the employ of a wholesale distributor of hardware and machinery. The duties of plaintiff’s employment included work in his employer’s warehouse, the loading and unloading of hardware and other machinery from railroad cars and trucks. Also comprised in his duties were the driving of trucks and the delivery of merchandise to his employer’s customers. To carry out this work plaintiff was required to stoop and bend, and to lift and carry heavy loads weighing as much as 400 pounds.
On the occasion of the accident involved, plaintiff was driving a truck-trailer combination, loaded with hardware and various forms of machinery, and, making deliveries in East Texas. After leaving Winnsboro, Texas, en route to Pittsburg, Texas, on a route under reconstruction, plaintiff’s right truck wheel struck some object, swerved to the right, “jackknifed,” and overturned. Plaintiff was thrown from the cab and the trailer fell on him.
Injuries immediately manifestly themselves consisted of bruises and contusions about the body, a stiff and painful neck, and lacerations on his left leg. On being extricated from the wreckage, plaintiff was immediately carried by ambulance to a hospital in Pittsburg, Texas, where he remained four days, after which he was returned to his residence in Shreveport. Two days later, he was placed in a local hospital under the care of Dr. Erie W. Harris, Sr., who, after making X-rays, placed plaintiff in traction. Plaintiff, not having responded to treatment, Dr. T. M. Oxford, an orthopedist, was consulted August 26, 1958.
Dr. Oxford, after an examination, including the making of X-rays, diagnosed plaintiff’s primary injury as a fracture dislocation of the fourth and fifth cervical vertebrae. Plaintiff was again placed in traction for a period of seven weeks. Noted, also, were plaintiff’s complaints of pain in his left knee and, later, in the lumbosac-ral area. The latter was attributable to a *396 possible strain. Plaintiff was hospitalized for three months and continued under Dr. Oxford’s treatment and observation until February 6, 1960, or for more than 18 months. At the trial, on April 22, 1960, Dr. Oxford estimated plaintiff’s permanent ■disability, due to the injury to the cervical spine, at 20 percent of the body as a whole. Plaintiff, in this witness’ opinion, will continue indefinitely to experience a slight stiffness of the knee, with some discomfort and pain.
The trial of the case was held open for the taking of additional testimony. Accordingly, the report of Dr. Heinz K. Faludi, specialist in neurological surgery, dated May 12, 1960, was filed in evidence. According to this report, Dr. Faludi found an oblique scar on the left leg about 15 centimeters in length, a small scar over the knee, and another about 12 centimeters in length over the lower left thigh, with a second scar beneath it. Although healed, they evidenced previous abrasions and lacerations. Flexion of the lumber spine was limited to 80 percent of normal. Examination of the cervical spine revealed a slight reduction of the usual lordosis, or curvature. Flexion of the cervical spine was limited to 50 percent of normal, with right and left bending to 40 percent of normal. Tenderness was found over the midcervical processes and a head compression test increased pain in the midcervical region. In further commenting upon his findings, Dr. Faludi stated:
"X-rays of the lumbosacral spine: In AP, left lateral, right and left oblique view revealed no fractures, there was ■slight narrowing of the L5-S1 inter-space. There was slight sclerosis around the articular facets between L5 and SI.
"X-rays of the cervical spine: In AP, right lateral view revealed an old mild compression fracture of C5 and .there is obliteration of the interspace ¡between C4 and C5 with some callus formation around the anterior portion '.of' the body of C5. The 4th cervical vertebra is slightly displaced forward on the 5th cervical vertebra. There is a reversal of the curvature of the mid-cervical spine. The lamina of C4 is partially defected presumably due to the old fractures.
‘‘X-ray of the left knee revealed some calcification over the external condyle. No other bone or joint pathology was seen.
‘‘Comment: This patient suffered a severe injury to his neck, causing a fracture dislocation of C-4 and C-5. This dislocation was successful (sic) reduced and on today’s examination no evidence of dislocation was present. However, the X-rays still show evidence of compression of this vertebra and there is narrowing of the inter-space. There is also slight malalignment in the region of C-4 and C-5. It is believed that this patient will have permanent residuals from this accident, particularly causing restriction of motion in the cervical spine, and possibly some local pain. It is believed that this patient has received maximum benefits of hospitalization, and of medical care. The patient probably could perform usual type of work, but should guard against very excessive motions of the neck. In addition, the patient had minor evidence of a lumbosacral sprain, with only minimal symptoms. Finally, the patient must have suffered originally lacerations and contusions, as well as abrasions, to the left leg and there are residual scars to this region. The patient may have sprained his left knee and there are some residual symptoms present referrable to the knee, which are not particularly disabling. It is estimated that this patient has a permanent partial disability of about 15 to 20% for the body as a whole, in view of the malalignment of the cervical vertebra and the potential pain and the limitation of motion which are the result of it.”
*397 Under the belief he was unable to do the work of his former employment, plaintiff sought employment elsewhere. On at least three occasions, he attempted to do work of a similar character and comparable in nature to the duties of his former employment. Even with the assistance of his fellow employees, he was unable to do this work because of the disability sustained and accompanying pain. However, at the time of the trial, he was driving a pickup truck for an electric supply company handling merchandise not exceeding 40 pounds in weight. This was incomparable to his former work, which could only be classified as heavy manual labor.
The evidence is convincing that plaintiff is unable to continue to perform heavy manual labor and that, while he did perform work of a lighter nature, he is unable to perform the same character of work formerly done. The test of total and permanent disability is whether the injured employee is capable of performing the work or the occupation in which he was engaged at the time of the injury, or whether he is able to do the kind of work he is trained to •do or customarily does in the usual and •customary way, and without any serious impairment of his capacity to do such work. Bean v. Higgins, Inc., 230 La. 211, 88 So.2d 30; Wright v. National Surety Corp., 221 La. 486, 59 So.2d 695; Morgan v. American Bitumuls Company, 217 La. 968, 47 So.2d 739; Reeve v. Clement-Braswell Machine & Fab. Works, La.App.2d Cir., 1953, 66 So.2d 387. Appropriate here is an expression of the Supreme Court in the Bean case to this effect [230 La. 211, 88 So.2d 32]:
“ * * * If a welder’s’ helper is not a skilled worker and his work can be classified as only one phase of common or manual labor, plaintiff is unable— as shown by the evidence—to perform heavy manual labor.”
Nor may plaintiff’s complaints of pain while performing lighter work be entirely discounted where the medical experts found, as they did here, objective symptoms for such complaints. It is well recognized in the jurisprudence of this State that the law does not expect, contemplate, or require that an employee, in order to earn a living, work in pain. Brannon v. Zurich General Accident & Liability Ins. Co., 224 La. 161, 69 So.2d 1, and the authorities cited therein.
The nature and character of plaintiff’s injuries and disability to perform heavy manual labor, no doubt, seriously and substantially handicap him in competing with able-bodied workers in the flexible market for common labor. And, it cannot be said that plaintiff, in his present physical condition, is able to perform the duties required of heavy manual labor. Where the physical injury has an appreciable effect on an employee’s capacity to perform the duties formerly required of him, or where substantial pain results, the medical estimate of a percentage disability will be disregarded and compensation for total disability awarded, particularly where the injury is one which basically affects the motions of the entire body as in the case of back injuries. Strother v. Standard Acc. Ins. Co., La.App. 1st Cir., 1953, 63 So.2d 484; Watson v. Floyd Electric Company, La.App. 1st Cir., 1954, 75 So.2d 361; Jones v. Brewton, La.App.2d Cir., 1960, 121 So.2d 600.
Total and permanent disability, under the compensation law, is not necessarily measured by the percentage of an injury-producing disability; a small percentage of disability of the body as a whole may result in a laborer’s total incapacity to discharge his former duties or work of a similar character. Malone’s Louisiana Workmen’s Compensation, § 278, 1960 Supp., p. 97.
The trial court found, from the evidence in this case, that plaintiff was totally and permanently disabled within the purview of the provisions of the Workmen’s Compensation Act, LSA-R.S. 23:1021 et seq., and rendered judgment accordingly. We are not only unable to find that he com- *398 nutted manifest error, but our own study and review of the record convinces us of the correctness of his conclusions.
The judgment appealed is, therefore, affirmed at appellants’ cost.
Affirmed.