142 So.2d 501 (1962)
Robert HARRIS, Plaintiff-Appellee,
v.
ARGONAUT INSURANCE COMPANY et al., Defendants-Appellants.
No. 9739.
Court of Appeal of Louisiana, Second Circuit.
June 14, 1962.
Rehearing Denied July 5, 1962.
*502 Simon, Carroll, Fitzgerald & Fraser, Shreveport, for appellants.
Robinson & Atkins, Homer, for appellee.
Before HARDY, GLADNEY and AYRES, JJ.
AYRES, Judge.
By this action, plaintiff seeks to recover of his former employer and the employer's insurer benefits under the workmen's compensation statute for total and permanent disability.
Defenses tendered by defendants relate (1) to the occurrence of an accident, (2) to a causal relationship between the alleged accident and plaintiff's alleged disability, and (3) to the extent and duration of plaintiff's alleged disability. The issues thus presented were resolved in plaintiff's favor. *503 From a judgment in which plaintiff was awarded compensation as prayed for, defendants appealed.
Plaintiff's claim is predicated upon accidental injuries purportedly sustained July 26, 1961. On that occasion, while engaged in loading a truck with pulpwood, plaintiff claims to have suffered a severe back sprain and probably a herniated intervertebral disc. Total disability is claimed to have resulted.
The issues, factual in character, require a detailed statement and discussion of the facts as established in the record. Certain of the material facts are apparently not in dispute; others are very much in controversy.
Plaintiff, 22 years of age, of apparently robust health and physique, assisted by two fellow employees, placed a stick of pulpwood of unusual size and weight upon his shoulder. Thus, weighted down, he walked over deep sandy soil to his employer's truck, where the wood was rolled from his shoulder onto the truck. Released from the load, plaintiff, exhausted, leaned against a wheel of the truck. The employer, present in the truck, testified, as did the fellow employees, that plaintiff was in a severe strain in carrying this load.
That plaintiff sustained accidental injuries is, however, a matter in dispute. Plaintiff testified that he experienced a numb feeling or sensation in his lower back as if the affected area were "asleep." Nevertheless, he made no outcry nor complaint at the time that he claimed to have sustained the injury, but continued with his work. Assigned as a reason for his failure to complain is that he attached no importance to the experience at that particular time. Ill effects, however, became manifest during the night. Although he reported for work the following morning, plaintiff soon found he was unable to continue to discharge the duties of his employment. Information was then conveyed by him to a fellow employee as to the injuries sustained the day before. A report was also made to his employer, who conveyed plaintiff to his residence, and who, within the next few days, obtained medical attention for him.
Plaintiff was first seen by Dr. S. A. Tatum, a general practitioner, on Saturday following the occurrence of the accident on a Wednesday. Dr. Tatum's testimony was not obtained. Mention is made in the record, however, that he was not available to testify at the time of the trial. The doctor, however, according to plaintiff's testimony, suggested that plaintiff be admitted for treatment in the Confederate Memorial Medical Center in Shreveport. This, plaintiff declined because of his family who, in his opinion, required his presence and attention. Plaintiff, however, was admitted to the Homer Memorial Hospital August 2, 1961, where he remained until August 5, 1961, under treatment by Dr. G. C. Black, Jr.
From examinations made by Dr. Black prior to, as well as after, plaintiff's admission to the hospital, the doctor found that plaintiff had a slight limp, favoring his right leg, with other positive findings of injury mostly relegated to the lower back. Noted was a loss of the normal lumbar lordosis or anterior concavity of the back. Observed, also, was a severe bilateral spasm of the perispinae muscles, more rigid and severe on the right side. Tenderness was disclosed in the same region, particularly in the area of the fourth and fifth lumbar vertebrae. From these examinations, the doctor was of the opinion that plaintiff had sustained a severe bilateral lumbosacral strain and probably a herniated disc.
While in the hospital, plaintiff was treated with pelvic traction, muscle relaxants and analgesics, and heat. Improvement followed to the extent that it was thought plaintiff could return home, although not free of symptoms. A further examination, on August 9, 1961, again disclosed tenderness and pain in the lower lumbar region. Similar treatment was applied, despite which no improvement was noted as of August 17, 1961. Plaintiff was then referred by Dr. Black to Dr. Philip Bonn, a *504 neurosurgeon, for examination and suggested treatment.
Dr. Bonn's examination of August 21, 1961, disclosed a moderate loss of lumbar lordosis, moderate to severe lumbar perispinae muscle spasm, tenderness in the entire lumber perispinae muscle group, and tenderness at the interspace between the fourth and fifth lumbar vertebrae. Pain was elicited at the interspace between the fourth and fifth lumbar vertebrae by lumbosacral movements. Pain was also produced through bilateral straight leg-raising at 90 degrees. The doctor was suspicious of a spondylolisthesis. Hospitalization was suggested with special medication of four grams of Robaxin and 250 ccs. of 5% glucose in a saline solution, a potent muscle relaxant. Dr. Black administered this medication, following which dramatic improvement was noted. However, plaintiff's condition became static and, notwithstanding a continuation of the treatment, no further improvement was observed.
By an examination on the morning of the trial, tenderness was shown to persist over the area of the fifth lumbar vertebra, most marked on the right side. Flexion or movement of the lumbar vertebrae produced pain. Tenderness persisted in both sciatic notches on the hips, more pronounced on the right side. A diminution of pinpoint sensitivity in the left thigh and calf was also noted.
Various tests were made, the results of which were indicative of a ruptured disc. These symptoms, in many instances, would likewise indicate a severe bilateral lumbosacral strain which Dr. Black was certain plaintiff experienced. As a result of his many observations prior to and on the morning of the trial, the doctor was convinced that plaintiff had sustained a ruptured disc.
That plaintiff was, at the time of trial, totally disabled for the performance of the same or a similar character of work he was doing at the time he was injured, was the opinion expressed by Dr. Black. When pressed for an estimation of a period sufficient for plaintiff's recovery, the doctor expressed the opinion that, if plaintiff responded to treatment, and if he had only a back sprain, an interval of four to six weeks would ordinarily suffice. This estimation was characterized as a mere guess. But, the doctor stated plaintiff would not, under the most favorable circumstances, be able to resume work requiring heavy lifting or straining, normal requirements of his former occupation. The opinion was also expressed that plaintiff, in the performance of any work requiring heavy lifting or standing for a considerable period of time, would experience discomfort and pain, and that such condition would probably prevail "from here on out." In other words, the opinion was that plaintiff had a permanent back injury.
Dr. Willis J. Taylor, an orthopedic surgeon, examined plaintiff on one occasion, that is, on October 4, 1961, nine days prior to the trial. Dr. Taylor found no objective symptoms of accidental injury; nor did he find any residual disability; he expressed the opinion that plaintiff was able to and could return to work as a pulpwood laborer. However, by his examination, tenderness was found over the left iliolumbar angle and over the midline of the lumbosacral junction located in the area of the fifth lumbar vertebra. No satisfactory account was shown for the presence of this condition other than through accidental causes. Dr. Taylor conceded, however, that, if he were an examining physician making a pre-employment physical, he would not pass plaintiff for employment. This, he said he would not do, not from any injury plaintiff had sustained, but because of a congenital back condition. In this regard, it was testified that the first sacral segment of the spine is transitional, sacralized only on the right side, causing the surfaces of the joints to be out of harmony one with the other and in different planes. This congenital condition would, the doctor stated, render plaintiff more likely to strain and would *505 probably prolong the duration of a sprain if one occurred.
Pertinent to the question of plaintiff's disability, is his previous good work record. Lyons v. Swift & Company, La. App. 2d Cir., 1956, 86 So.2d 613, 621 (writs denied); Booker v. Phoenix Insurance Company, La.App. 2d Cir., 1960, 124 So.2d 246. Although only 22 years of age, he had engaged in this line of pulpwood work for several years without complaint, except as to one prior accident for which he made no claim for compensation. While the record discloses that, for a brief period of time prior to trial, plaintiff had been employed in a meat packing plant to cut meat with an electric saw, this work required no heavy lifting and could in no sense be characterized as strenuous labor. Nor do we deem it a matter of any importance that plaintiff, on one occasion, assisted in removing some household furniture.
Defendants insist that the opinion of Dr. Taylor, a specialist in the particular field of medicine to which plaintiff's injuries are related, is entitled to greater weight than that of Dr. Black, a general practitioner and surgeon who treated plaintiff. In weighing and evaluating the testimony of medical experts, certain rules have been established in the jurisprudence, among which are (1) that the opinion of the treating physician is entitled to greater weight than the opinion of a doctor examining the claimant at a later date and for purposes other than for treatment. Williams v. New Amsterdam Casualty Company, La.App. 2d Cir., 1960, 121 So.2d 760; Richmond v. New Amsterdam Casualty Company, La.App. Orleans, 1956, 85 So.2d 717; and (2) the opinion of a physician specialized in a particular field of medicine to which plaintiff's injuries are related is entitled to greater weight than the opinion of a physician engaged in general practice and not so specialized. Williams v. New Amsterdam Casualty Company, supra; Walker v. Monroe, La.App. 2d Cir., 1953, 62 So.2d 676; Rider v. R. P. Farnsworth Co., La.App. 2d Cir., 1952, 61 So.2d 204; Price v. T. L. James & Co., La.App. 2d Cir., 1951, 53 So.2d 182.
We are not unmindful of these rules and are generally in accord therewith.
Injuries to one's back have been held to properly come within the field of medicine of the orthopedist.
There is, however, an equally well-established rule that, where witnesses differ, the courts should reconcile, if possible, the apparent contradictions in their testimony. If this cannot be done, then the probabilities and improbabilities of their respective statements must be considered in the light of their capacity, opportunity or incentive for observation, the amount of corroboration, if any, and the degree of proof required. Fridge v. Talbert, 180 La. 937, 158 So. 209, 212; Fogleman v. Interurban Transp. Co., 192 La. 115, 187 So. 73, 76-77; Cockrell v. Penrod Drilling Co., 214 La. 951, 39 So.2d 429, 437; Morris v. Supreme Bedding & Furniture Mfg. Co., La.App. 2d Cir., 1960, 126 So.2d 413; Booker v. Phoenix Insurance Company, supra; Istre v. Molbert Brothers Poultry and Egg Co., La.App. 3d Cir., 1960, 125 So.2d 436 (writs denied).
In applying these rules and in giving due weight and credit to all the testimony, it appears that the testimony of the attending physician, although a general practitioner and surgeon, should, because of his opportunity for observation as an examining and treating physician, be accorded great weight. His opportunity for observation of plaintiff's condition over a period of time is much greater than that of a physician who has made an examination for purposes other than for treatment.
The test of total and permanent disability of an injured employee is whether the injured employee is capable of performing the work of the same or similar character, or the occupation in which he was engaged at the time of injury, or whether *506 he is able to do such work in the usual and customary way without experiencing pain. Bean v. Higgins, Inc., 230 La. 211, 88 So.2d 30; Carlino v. United States Fidelity & Guaranty Co., 196 La. 400, 199 So. 228; Coon v. Germany Iron Works, La.App. 2d Cir., 1955, 81 So.2d 83. Applying this test to the facts of the instant case and giving consideration to the medical testimony, in accordance with the aforesaid rules, the conclusion is inescapable that plaintiff was, at the time of trial, totally disabled for the performance of labor required in the pulpwood industry or work of a similar character. On this point the evidence, as heretofore pointed out, is insufficient to establish any definite period for its duration. Where a claimant is shown to be totally disabled at the time of trial and the evidence does not clearly indicate the duration of disability, compensation should be awarded for the maximum number of weeks for total and permanent disability. Monk v. American General Insurance Company, La.App. 2d Cir., 1962, 137 So.2d 459, 462; Thomas v. Crown-Zellerbach Corporation, La.App. 1st Cir., 1958, 101 So.2d 478, 482; Peavy v. Calcasieu Paper Co., La.App. 1st Cir., 1954, 70 So.2d 755. In such cases, it may be observed that the statute makes provision for the protection of the employer and the insurer in authorizing a review of the judgment at any time six months after its rendition upon the application of either party thereto, on the grounds that the incapacity of the employee has been subsequently diminished or increased, or that the judgment was obtained through fraud, error, or misrepresentation. LSA-R.S. 23:1331.
The trial court concluded, as shown in a written opinion, that plaintiff sustained accidental injuries and that, as a result thereof, he was totally incapacitated for the performance of the duties of his former employment or work of a similar character. A further conclusion was reached that the evidence failed to establish a probable duration of plaintiff's disability. Our own review of the record, as we have indicated in more or less detail, leads us to the same conclusion. Hence, we find no manifest error in the award of compensation.
Defendants, however, further complain of that portion of the judgment condemning them for the payment of all future medical expenses. Plaintiff concedes the merit of this contention. No provision is made in the workmen's compensation statute for an award for future medical expenses. Barbara v. Lumbermen's Mutual Casualty Company, La.App. 4th Cir., 1962, 137 So.2d 467, 470. See, also, the authorities therein cited. However, the right to assert such claim for future medical expenses, if and whenever incurred, should have been reserved unto plaintiff.
Accordingly, for the reasons assigned, the judgment appealed is amended by rejecting plaintiff's demands for future medical expenses as of nonsuit, reserving to him his rights to such future medical expenses, if and when incurred, and, as thus amended, the judgment is affirmed at defendants-appellants' cost.
Amended and affirmed.
GLADNEY, Judge (dissenting).
I am in accord with the majority view as to the occurrence of an employment injury, but I am of the opinion that continuance of disability ceased and compensation accrued only up to the date of the examination by Dr. Taylor, on October 4, 1961, which found the employee free from disability attributable to the accident. In rejecting this opinion of an eminent orthopedist with respect to the back injury, the court has substituted the opinion of Dr. Black, a physician not so specialized, predicated on an examination made by Dr. Black on the date of trial, October 13, 1961. The latter examination produced only subjective symptoms which were not substantiated by lay testimony. The opinion of this court, so it seems to me, merely accepts the opinion of a general practitioner in preference to that of a specialist as to the existence *507 of disability which admittedly falls within the orthopedist's field. The holding, therefore, is in conflict with the well established rule in our jurisprudence that under the above stated circumstances, the opinion of the orthopedist should prevail.
Rehearing denied; GLADNEY, J., dissents from refusal.