REID, Judge.
This is a suit for workmen’s compensation as a result of an accident alleged to have happened on January 13, 1957 at 4:00 P.M. while plaintiff, Arthur Guidry, was employed by defendant, Jahncke Service, Inc., in the Parish of Iberville.
Plaintiff alleges he was employed as dumper on a dredge and during the course of his employment was rolling a piece of pipe approximately Z4 feet in length with a diameter of 18 to 24 inches, which fell to the ground, and in attempting to keep the pipe from rolling over him he held on to it, but the pipe fell across his legs and injured him. He continued work until about 4:00 P.M. and after having a meal he became nauseated for approximately eight days. He was first examined by Dr. Robert L. Morrow of Arnaudville, Louisiana, who diagnosed his injury as pain and tenderness over the lumbosacral area associated with leg pains and limitation of motion of the back.
Plaintiff was next seen by Dr. James Gilly of Lafayette on May 3rd and May 9th, 1957, who was of the opinion he had recovered.
Plaintiff further alleges defendant willfully, capriciously, and arbitrarily refused to pay any compensation to him subsequent to May, 1957. He further alleges total, permanent disability and prays for compensation as such at the rate of 65% of his weekly wages not to exceed $35.00 a week and not to exceed 400 weeks, subject to credit for compensation paid, and also prays for penalties, interest and attorney’s fees for defendant’s failure to pay compensation.
Defendant filed an answer denying all allegations of plaintiff’s petition, admitting plaintiff was examined on January 18, 1957 by Dr. Robert L. Morrow of Arnaud-ville, and on February 11, 1957, at the request of plaintiff’s own medical expert, Dr. D. J. DeBlanc of Opelousas, plaintiff was examined by Dr. James Gilly of Lafayette, an Orthopedist Consultant. Defendant alleged Dr. Gilly examined the plaintiff in 1957 on February 13, February 27, March 27, April 10, April 25, May 9, and August 14 and found on each of the last two examinations plaintiff was fully recovered and able to return to the full duties of his regular employment. Defendant further admitted amicable demand, and that plaintiff’s claim is governed by the Workmen’s Compensation Law of the State of Louisiana.
The matter was tried in the Lower Court in June, 1958 before the late Judge C. Iris Dupont. Only lay testimony was heard at that time, and both parties were allowed to complete medical testimony by depositions and submit the matter to the Court. Judge Dupont retired from the Bench before the case could be submitted and it was finally submitted to his successor, the present Judge of Division A. The matter was fixed for argument on February 20, 1962 on which day plaintiff’s attorney failed to appear. The Minutes show as all evidence had been submitted in the matter the Court was requested to render judgment and judgment was signed in favor of the defendant, rejecting plaintiff’s demands and dismissing his suit at his costs
From this judgment the plaintiff-appellant prosecutes this appeal.
Plaintiff-appellant makes no specific assignment of errors but complains the Lower Court failed to render written reasons for judgment, and there is nothing for this Court to review other than the record and submits the only error is that the Lower Court disregarded the fact there was any injury and the fact there was evidence of some disability.
Plaintiff produced four witnesses who were coworkers to prove the occurrence of *67 an accident. The first witness, Captain Oliver Daussin, testified concerning the type of work plaintiff was doing, but stated he did not see the accident and only heard about it. The second witness, Howard Sanders testified he knew Arthur Guidry and was working close by him when he was supposed to have been hurt. He was performing the same type of work as the plaintiff, namely rolling pipe. He also testified he did not know whether or not he was hurt. He did not see anything unusual. The next witness, Archie Stewart, testified he was a clerk and civil engineer employed by defendant. He was working on the alleged date of the accident, January 13, 1957 at the site of the job and he knew Arthur Guidry at the time, but he did not know anything about the accident. He further testified accidents are generally reported to him and if severe enough, in his judgment, he sends the injured employee to a doctor. The next witness, Felix Noelle, testified he was working for defendant as a dump foreman at the time of the trial, but at the time of the alleged accident he was working on the “bull gang”. This is a crew that pushes the pipe along the other line to lay it in place. He stated he was guiding the pipe and plaintiff was pushing and that it was on level ground where the levee was made. He did not see the plaintiff slip and did not see the pipe roll back toward him. He also stated the plaintiff worked for two days after the alleged accident, and that he did not know of his own knowledge plaintiff was injured.
Plaintiff testified he was working on January 13, 1957, which was on Sunday, engaged in rolling pipe, and that Felix Noelle was not there at the time of the alleged injury; that he was pushing his own pipe and that Bergeron was there. He testified Sanders was there but was in the dump with the dump foreman and was present when he told the dump foreman of his injury. According to his testimony no one else was around when the pipe rolled back on him except the man who was in front of him who did not see it. Pie states he first reported the accident to Bergeron, who accompanied him to the dump foreman and was the only one present when he reported his injury to a man named Paul Tobin. He further testified when he fell - he experienced a burning sensation and he thought it was possible a spider had bitten him. He went back to work and at 4:00 P.M. took his bath and then became nauseated, and he remained nauseated for about four weeks. After he became nauseated he went to the timekeeper who sent him to a doctor in Donaldsonville. He worked on Monday after the accident but on Tuesday he was unable to work. He then went to see Dr. Morrow who in turn sent him to see Dr. Gilly. Dr. Gilly gave him a higher shoe and a corset which he was wearing at the time of the trial. He claimed he had pain in his leg and back all the time.
The defendant brought out on cross examination plaintiff claimed he fell in a sitting position and that the pipe rolled back on his leg, and the grass was slippery which had contributed to the accident. He did not call out for help because he did not realize he was hurt. He identified Paul Tobin as foreman of the job, and further testified he was not able to perform any work and had not done any work since the accident.
The depositions of five doctors were taken and filed in the record, namely, Dr. D. J. DeBlanc, Dr. Richard W. Levy, Dr. Robert Morrow, Dr. James Gilly and Dr. Harry Dunlap Morris. Of these only Dr. DeBlanc was called by the plaintiff.
Dr. DeBlanc testified he had made an x-ray that was negative of any fractures, and he found some pain radiations in one of the lower extremities, and the x-rays were negative of arthritic involvement. He also testified on his examination in August 1957 he found pain radiating in the left leg and, on the examination of plaintiff on the day he gave his testimony, he found pain radiating in the right leg. He could not evaluate plaintiff’s condition and he *68 thought the situation was very “bizarre.” Dr. DeBlanc is a general practitioner.
Dr. Richard W. Levy, a neuro-surgeon testified for defendant. In his opinion plaintiff did not have any diseases of the spinal cord or nerve roots, nor did he have a ruptured intervertebral disc in the lumbar region. He did not know of any structural diseases or any organic condition in the nervous system that would produce only a sensory loss with preservation of muscle strength and deep tendon reflexes. He found no atrophy. He testified he considered the finding of complaints of pain in the left leg at first, and then in his right leg as highly unusual and bizarre. He also testified the plaintiff had no present residual disability referrable to the low back. With reference to the neurological examination specifically of the spinal cord, nerve roots and peripheral nerves he could find no neurological basis for plaintiff’s complaints or inconveniences.
Dr. Robert L. Morrow, who qualified as a general practitioner, gave his deposition as a witness for the defendant. He was the first doctor to examine plaintiff and stated he found lumbosacral muscle strain. He anticipated the plaintiff would be in-capacitiated as a laborer for about four weeks. He examined him on January 17, a few days after the accident. He gave him diathermy treatments, and filially referred him to Dr. Gilly when plaintiff did not seem to be getting any better. He stated it would be rare for a lumbosacral strain, in the absence of any accompanying condition, to produce a permanent residual disability.
Dr. James Gilly, who qualified as an expert Orthopedist, testified by deposition as a witness for the defendant. He examined the plaintiff and found the right lower extremity, showed approximately 2.2 centimeters of shortness which is about 3/4 of an inch. He testified at the time of his examination the patient was disabled and he felt he had sustained a combined lum-bosacral lumbodorsal strain and the period of convalescence was prolonged by the shortening of the right lower extremity. He prescribed strict bed rest and a lum-bosacral corset or support and had the heel of the right shoe elevated 3/4 of an inch. He found the patient’s subjective pain inconsistent with his physical findings. Upon being asked if this did not seem bizarre in any way he stated, “I don’t say bizarre. I would say that he just didn’t want me to realize how well he was getting along.” Dr. Gilly further stated on May 9, 1957 he examined plaintiff and was of the opinion he was fully recovered from the lumbosacral lumbodorsal muscle strain and he felt that he was capable of returning to his normal occupational duties as a laborer. He discharged Guidry after the May 9th examination. At the request of plaintiff’s attorney he again examined plaintiff on August 14, 1957 at which time he was of the opinion plaintiff was grossly exaggerating his complaint. He stated the average convalescent period from a combined strain, such as suffered by plaintiff, was from two to three months. He reiterated he felt that plaintiff had fully recovered from his original muscle strain and he could return to full duty as a laborer. He examined him again on September 23, 1959 which was the date he gave his deposition. At that time he found plaintiff did not relate any additional factor of medical history which would be pertinent to this case. He was steadfast in his opinion plaintiff was exaggerating his complaints and that plaintiff was capable of performing his normal duties as a laboring man. He found during his examination, plaintiff complained of pain in the lower back when his legs were raised 6 inches- from the table on which he was lying flat on his back, but plaintiff did not evince any pain at all on raising to the sitting position while his legs were still on the table, and that this was definitely inconsistent.
The next doctor who testified for the defendant was Dr. Harry Dunlap Morris, a qualified expert in the field of Orthopedics, practicing at Oschner’s Clinic in New *69 Orleans. He examined plaintiff on May 5, 1958 and found the x-rays were essentially normal and plaintiff could not designate objective physical findings to substantiate the plaintiff’s subjective complaints. There were many inconsistencies. He felt plaintiff had recovered sufficiently to return to his normal occupation and that plaintiff was exaggerating his complaints. He found no evidence of muscular atrophy in the leg, stating the circumference of the calf of each leg was 15 inches. He also found plaintiff complained of a great deal of pain when he hyperextended his spine in a certain position, but when the patient lay in a prone position on the examining table and propped his hips and upper part of his body on his elbows he did not complain of any pain. These two positions, according to the doctor’s testimony, are approximately the same degree of hypertension and are comparable. Dr. Morris found the difference in the responses of the patient to be unusual. He found a difference between the subjective complaint and the objective findings to be bizarre and most unusual. He could find nothing to indicate the presence of a ruptured intervertebral disc and in his opinion it would be doing the man an injustice to do a mylegram. He felt the man had no disability of any sort when he examined him from an objective standpoint, and further that the patient had no residual resulting from the accident that would keep him from being able to perform any physical task he could do before he was injured. He could find nothing wrong with plaintiff and gave his opinion that plaintiff was not disabled which opinion was based just as much on his own findings of inconsistent clinical responses as opinion and conclusion based upon the absence of objective evidences of disability.
Appellant urges this Court to find from the evidence and the record that plaintiff sustained a disability which extended from the date of the injury through May 17, 1957. There is no question this is true as the stipulation in the record is to the effect that if the plaintiff is entitled to anything, which defendant denies, he is entitled to $35.00 per week which has been paid to him through May 17, 1957.
We do not feel that plaintiff has borne the burden of proving further disability. The medical evidence is overwhelming that plaintiff had no disability of an orthopedic or neurological nature and he could return to his regular employment. The only medical witness called by plaintiff, Dr. DeBlanc, did not give any contradictory testimony. He was a general practitioner and he examined the plaintiff on only two occasions. He admitted on cross examination, plaintiff’s symptoms were not typical of lumbo-sacral pathology and referred him to Dr. James Gilly, the Orthopedist.
Plaintiff’s fellow-workers did not substantiate his testimony as to the accident, or the injury.
At the conclusion of the lay testimony plaintiff wanted to hold the matter open so the testimony of Dr. Roy D. Folse of Donaldsonville, Louisiana, who he stated had examined him two days after the alleged accident could be obtained. The testimony of Dr. Folse was never presented.
Assuming for the’ sake of argument that Dr. DeBlanc’s testimony is to the effect that the man had an accident and was still suffering some pain from it we feel the testimony of the experts should prevail.
“The general rule is that in workmen’s compensation cases the testimony of the specialist should prevail over that of the general practitioner in case of conflict in their testimony. Rider v. R. P. Farnsworth Company, La.App., 61 So.2d 204, Carter v. Consolidated Underwriters, La.App., 62 So.2d 682, and Richmond v. New Amsterdam Casualty Company, La.App., 85 So.2d 717.” Edwards v. Aetna Casualty & Surety Company, 103 So.2d 126.
For the foregoing reasons the judgment of the Lower Court is found to be correct and therefore affirmed.
Affirmed.