McBRIDE, Judge.
This appeal, taken by defendant from an adverse judgment, presents only questions of fact. The trial judge handed down written reasons for judgment, which cov *136 er all phases of the case, and believing the reasons to be correct we now adopt them as our own opinion in this case.
“Reasons for Judgment
“Plaintiff, on May 19, 1950, was employed by the defendant, Marion T. Fannaly, Inc., as a strawberry inspector in defendant’s plant at Poncha-toula, Louisiana. Plaintiff’s work required that she mount a platform which was approximately thirty-three inches above the floor, to perform her duties of segregating bad or spoiled strawberries from the good. The strawberries were passed in front of her by a conveyor belt.
“In order to get on the platform, of which there were six in the plant, five others besides the one on which the plaintiff was working, the defendant supplied portable steps. The evidence shows further that on the night of May 19, 1950, there were no portable steps at the platform where the plaintiff was working; that she and some fourteen other employees gained access to the platform by stepping upon a box, or a spinach crate. The evidence did not indicate who placed the crate or box near the platform.
“The plaintiff, in attempting to descend from the platform, stepped again upon the spinach crate and it collapsed under her weight, causing her to fall. She was picked up by a Mr. Picou, an employee of the defendant’s, and was taken to a rest room in another building where medication was applied to a cut on her arm. Later that same night the plaintiff returned to work.
“From the fall plaintiff received a cut bn her right upper arm, and a badly bruised right ankle. The back of her dress was wet from the shoulders down, from water which was on the floor. The evidence shows that the day after the accident plaintiff was sent to the company doctor, and a short time later she was sent again to the company doctor. She remained under his care until the end of July, 1950. Dr. B. Scott and Dr. G. Scott, according to the evidence, were the company doctors.
“The evidence show further that plaintiff continued her duties during the month of July, 1950, although she complained of pain. She was then sent by her employers to the Ochsner Clinic, in New Orleans, where she was under their care from August 29, 1950, through November 20, 1950.
“The plaintiff was examined by Dr. ■Colclough in New Orleans, on December 7, 1950, April 13, 1951, and June 18, 1951. Dr. Colclough testified that the plaintiff was suffering from a rupture of a cervical intervertebral disc, and that the X-rays which he examined were positive for such a rupture.
“It is true that Dr. Colclough testified that a ruptured disc can exist without an accident, but he positively testified that in his opinion, from the patient’s history, there was a causal relationship between her injury at the time of the fall and the ruptured disc from which she was suffering, and that she was disabled from pursuing her usual occupation or any other similar occupation.
“The testimony of Dr. Harry D. Morris of the Ochsner Clinic, taken out of court and filed in this record, shows that the plaintiff had a mild protrusion of the cervical interverte-bral disc which was causing some nerve root pressure, which accounted for the pain in plaintiff’s shoulder and that Dr. Morris had recommended that plaintiff wear a Thomas collar.
“One of the points at variance in the testimony of Dr. Colclough and Dr. Morris, is that Dr. Morris was of the opinion that it is most unusual for a patient to have such an injury and not have the symptoms appear for a period of ten days following the injury, whereas Dr. Colclough testified that it is sometimes six months before the symptoms manifest themselves.
“Considering the testimony of the plaintiff, and her complaints of *137 pain, immediately after and while working, from the time of the accident until the end of July, 1950, her treatment by the company doctors, the diagnosis of Dr. Morris of a mild protrusion of an intervertebral disc in the cervical or neck area, and the positive testimony of Dr. Colclough that the patient is suffering with a ruptured cervical intervertebral disc, this court is of the opinion that the plaintiff has established that she is permanently and totally disabled, and that the cause of her disabiltiy arose out of and during the course of her employment.
“Defendants in their brief admit that the occupation of the plaintiff was hazardous within the meaning of the Workmen’s Compensation Act, LSA-RS 23:1021 et seq.
“The defendant does, however, strongly urge that the plaintiff deliberately failed to use the safe means furnished by her employer for passage to and from the platform. The court cannot agree with this contention of the defendant’s. The evidence shows that some fourteen fellow employees ’had used the 'box or crate for the purpose of gaining access to the platform, and this court is of the opinion that the plaintiff was reasonable in believing that the box would be substantial enough for her to use in stepping down from the platform.
“The evidence shows that the plaintiff, at the time of her injury, was employed at the rate of seventy-five cents per hour.
“It is the opinion of this court that the compensation in this case should be based on the daily rate of pay rather than on the average earnings. Rylander v. T. Smith & Sons [Son], Inc., 177 La. 716, 149 So. 434; Jarrell v. Travelers Ins. Co., 218 La. 531, 50 So.2d 22.
“At seventy-five cents per hour, under the rule laid down in the above ■cited cases, the daily rate of pay for the plaintiff would be six dollars and the weekly rate thirty-six dollars. 65% of $36.00 is $23.40.
“Accordingly there will be judgment in favor of the plaintiff, Agnes Schum, and against the defendant, Marion T. Fannaly, Inc., for workmen’s compensation at the rate of $23.40 per week, not to exceed four hundred weeks, with legal interest on each week’s compensation from its due date until paid, payments to commence from May 26, 1950; subject, however, to a credit of $23.40 per week for the ten weeks’ period beginning May 19, 1950, and ending July 28, 1950, during which time plaintiff was continuing to perform her duties in defendant’s plant and was paid her weekly wages. Daigle v. Higgins Industries, Inc., La.App., 29 So.2d 374; Bailey v. Maryland Casualty Co., La.App., 34 So.2d 354.”
Appellant assigns several errors, all having to do with the question of veracity of the witnesses. As we said at the outset, the case involves simply questions of fact, which were resolved favorably to plaintiff, and this brings to the fore the familiar rule which appellate courts invoke in cases which are to turn on the veracity of the witnesses. In such 'appeals, the appellant, to be successful, has the onus of showing that the findings of the trial judge are manifestly erroneous, and: that exaction of the law has not 'been met by the appellant here.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.
REGAN, takes no part.