JONES, Judge ad hoc.
Plaintiff has sued under the compensation act, L.S.A.-R.S. 23:1021 et seq., seeking the recovery of permanent and total disability from his employer, Nichols Construction Co., Inc., and it’s liability insurer, Travelers Insurance Company.
The allegations of the petition reflect that plaintiff’s employer was engaged in a hazardous business and that while he, plaintiff, was engaged in the course of his employment on April 9, 1957, he received an injury, consisting of the crushing of his left ring finger and the bruising of his hand.
Defendants filed a joint answer, in which they admitted that plaintiff was injured while in the employ of the defendant, Nichols Construction Co., Inc., and that the nature of their business was hazardous and that the ■ other defendant, Travelers Insurance Co., was the Workmen’s Compensation insurer of the defendant, Nichols Construction Co., Inc. Defendants deny that as a result of this injury, plaintiff is permanently and totally disabled from performing the type of work he was performing at the time of the accident and that they had already paid to the plaintiff an amount in excess of legal liability under the compensation law.
The matter was duly heard in District Court and the trial judge, for the written reasons contained in the record, found the plaintiff to be totally and permanently disabled and awarded compensation at the rate of $35 per week for a period not to exceed 400 weeks, with credit for payments previously made by defendants.
From this judgment both defendants have perfected a suspensive appeal.
Due-to the admissions heretofore made by the defendants, it is unnecessary to comment on how the injury occurred and the sole question presented for determination is did the injury which plaintiff has sustained prevent him from performing the same type of work he had performed prior to the accident. In the case of Bean v. Higgins, Inc., 230 La. 211, 88 So.2d 30, 32, a Supreme Court decision and the case of Borders v. Lumbermens Mutual Casualty Co., 90 So.2d 409, decided by this Court, the test to be applied in reaching a conclusion as to what constitutes permanent and total disability is as follows: “The test of total and permanent disability is whether the injured employee is capable of performing the work, or the occupation, in which he was injured at the time of the injury or whether he is able to do the kind of work he is trained to do or customarily does in the usual and customary way and without any serious impairment in his capacity to perform such work * * =i= ” Further, in deciding cases of this character, each case must stand or fall on its own merits, Newsom v. Caldwell & McCann, La.App., 51 So.2d 393. With the above legal principles in view, consideration will now be given to the factual situation presented herein.
*813 The plaintiff, Scarborough, was a combination welder. In performing his work, he did arc or electric welding, as well as acetylene or gas welding. The plaintiff was right handed and in doing electric welding, he employed only the use of his right hand, using the left hand as a brace. In performing acetylene or gas welding, the plaintiff would use both hands, manipulating the blow torch with his right hand and feeding the welding rod to the torch, for the purpose of melting it, with his left hand. The type rods used for welding are shown to be about three feet in length, varying in diameter from %2nds to %th inch.
During the time the plaintiff was employed by Nichols Construction Co., over a period of about eight months, he did nothing but electric welding and, of course, was engaged in this work when he was injured. Shortly after the injury, the plaintiff returned to work for a period of two or three weeks, the time being uncertain, but was given light work around the melting pots, and thereafter, he returned to the doctor and his finger was amputated through the proximal portion of the middle phalanx. About three weeks later, plaintiff returned to his work with the defendant employer and resumed his work as an electric welder for a period of some three months, at the end of which time he quit his employment for the reason, given by him, that he was unable to climb in connection with his work as a welder. Shortly thereafter, he went to work as a welder for Tellepson Construction Company, contractors for Dow Chemical Company at Plaquemine, La. In order to obtain this employment, he had to pass both an electric and gas welding test, which was not given by his employer, Tellepson Construction Company, but by the owner, Dow Chemical Company. He passed both of said tests and for a period of a month, he received his wages for working as a gas welder at Tellepson Construction Co. During this period, he was steward for the local union and, according to his foreman, these duties took up about fifty percent of his time. He was promoted to foreman, at an increase in pay, and was engaged in this work at the time of the trial.
The plaintiff’s complaints on which he seeks to establish that he is permanently and totally disabled are as follows: That his finger is sensitive; that he suffers the same pain in it as he would with a splinter inserted under his finger nail; that due to the partial loss of his finger, his left hand has become weakened, interfering with his climbing and that he experiences severe cramping in his hand, which prohibits him from climbing.
From a reading of the written reasons for judgment of the trial judge, it is apparent that he did not base his award on any of the above mentioned complaints.
It was a further complaint of the plaintiff that he lost a portion of his left ring finger, which finger, he testified, he used to guide the welding rod, and this complaint was the basis of the award of total and permanent disability by the trial judge. We quote from his written reasons as follows: “Plaintiff’s finger was injured more than a year ago. He has been actively engaged in the same type of work the greater part of the time since the injury, but has undertaken very little gas welding. The evidence relating to such as he has attempted, convinces me of his present disability. Whether he will be able to adjust himself to the loss of his finger, he does not know nor does the Court know; that he can presently do gas welding to some extent is beyond dispute; that his injury has substantially reduced his efficiency and productivity is, in my opinion, also beyond dispute. He is not now able to compete in the labor market on equal terms with fellow craftsmen of comparable age and experience. This evidences disability under the decisions of the higher courts” * * *
Two physicians testified in this case. Dr. J. Willard Dowell, who was called by the plaintiff and Dr. James Halley, who was called by the defendants. Dr. Dowell found *814 that the plaintiff had disability of 100 percent in his left ring finger and recommended that if the stump was sensitive enough to interfere with his work, that the finger be reamputated through the proximal phalanx. He further testified that his conclusions were that the plaintiff was capable of performing the same type of work he performed prior to this accident. He was of the opinion that the cramping condition, the plaintiff testified he experienced in his hand, was in no way connected with the injury to the finger but rather contributed this condition to three small nodules which he found in the palm of the plaintiff’s left hand.
Dr. Halley, who made a cursory examination of the plaintiff at the time of the trial, was of the opinion that an operation would relieve any sensitiveness or pain in the plaintiff’s finger. He found a slightly less disability than did Dr. Dowell, but agreed with the latter that the cramping condition about which the plaintiff complained was in no way connected with the injury to the plaintiff’s finger. He agreed with Dr. Dowell that the plaintiff in his present condition was capable of performing the same type work that he performed prior to the accident. The Court accepts the testimony of Doctors Dowell and Halley as conclusive that the cramping, about which the plaintiff complains in his hand and which he says prohibits him from climbing, was in no way connected with the injury to the finger. Further than this, testimony of Dr. Dowell that the three nodules found in the palm of plaintiff’s left hand and which he contends might have caused the cramping condition, is persuasive indeed that that is what did cause the cramping condition. While both of these doctors testified that in their opinions the plaintiff could at the time of the trial perform his duties as a welder, as well as he could prior to the accident, such an opinion by them is not fortified by experience of men who have worked a great number of years as welders. Newsom v. Caldwell & McCann, La.App., 51 So.2d 393. Thus, it is necessary to analyse the lay testimony.
The plaintiff called as witnesses, nine of his fellow workers. Two of these witnesses were welders, namely, Mr. Perkins and Mr. Robertson. Mr. Perkins, when asked (Tr. 31 and 32) what his opinion would be as to the effect of the loss of a ring finger in holding a welding rod, said that he hardly knew but it would be awkward and a man would have to redevelop a sense of touch i-n the other fingers to make up for it. He was of the opinion further, that this awkwardness would cause a loss in efficiency rather than speed. Of course, the plaintiff testified (Tr. 149) that the quality of his work was not impaired, only the quantity. When the other welder, Mr. Robertson, was asked (Tr. 50) if the type of injury, such as the plaintiff suffered, would give more trouble with electric or acetylene welding, he stated it would definitely cause you trouble, if any, in your acetylene welding. The other seven witnesses, who were pipe fitters, gave no definite opinion relative to the plaintiff’s disability, and, as a matter of fact, Mr. Copeland, who was the superintendent of the Tellepson Construction Co., and a welder himself, testified (Tr. 69) that a pipe fitter could not tell the difference between a good and a bad welder.
The defendants produced six witnesses, four of whom were actually engaged in gas welding at the time of the trial and the other two had been welders but were not engaged as such at that time. All of these witnesses were of the opinion that the physical loss of the left ring finger, or any part thereof, would not result in disability to a gas welder. One of these witnesses, a Mr. Fox, testified (Tr. 293) that he hurt his left ring finger and it was stiff for awhile and it did not interfere with his work, except once in awhile when he would bump it, it would hurt, but as far as a welder was concerned, it didn’t interfere with his work. Another of these witnesses, Claude Vaughn, (Tr. 241) testified that he *815 had worked continuously as a welder since 1920 and was engaged in gas welding, at the time of the trial, and his left ring finger was stiff and of no use whatsoever. It is true that this witness was injured prior to the time he started welding but he further testified that if he lost the finger while doing gas welding, this would not interfere with his ability as a gas welder. Most of these witnesses testified further that holding the rod with the left hand in gas welding is of secondary importance but the holding of the flame with the torch in the right hand was of primary importance. Our appreciation of their testimony is that the welding rod could be held between the thumb and any of the other fingers with the possible exception of the little finger, with a minimum of effort, for all that is necessary to be done with the left hand is to keep the end of the welding rod in the flame and keep moving the fingers up the rod to keep the hand from being burned.
From the above résumé of the testimony of the lay witnesses, the evidence preponderates in favor of the proposition that the plaintiff’s injury did not prevent him from carrying on his work as a welder, as well after as before, the said accident.
In addition to this testimony, there is the fact that some four months after the injury, the plaintiff obtained employment at the Tellepson Construction Co. and in order to do so, he had to pass both the electric and gas welding test. He experienced no trouble in passing the electric test, but when he took the gas or acetylene test, he did not pass on the first trial. He then practiced on this test for several hours and within two days passed it. In this connection, it is important to note that the testimony reflects that many old and experienced welders have failed to pass tests on occasion, and in view of the fact that this plaintiff had done no gas welding for a period of from eight to ten months, it is easy to understand that he could have failed the test without the injury to said finger having anything to do with said failure. The fact remains- that he did pass the test and actually went to work and did work as a welder for a period of one month, drawing the wages of a welder. In connection with this test, it is well to bear in mind that the owners of the Dow Chemical Co. gave the test and not the Tellepson Construction Co., who had contracted this work.
The testimony of Mr. Champagne, engineer for Dow Chemical Co., shows that when this test was given, he was interested only in the quality of the plaintiff’s work. While it is true that Mr. Becker, superintendent of Tellepson Construction Co., stated that had he not known the plaintiff was a good welder, he would have “gotten the gate” when he failed the first test, yet we note that this same witness 'testified that the plaintiff did his work as a gas welder satisfactorily, both as to quantity and quality.
The plaintiff has testified while doing this work at Tellepson’s he could make a good weld but that he could not make more than ten welds per day, whereas on prior jobs, he had made twenty or more welds in a day, never falling below twenty.
From the first day this plaintiff began welding at Tellepson’s, he was also steward for the local union and it was his duty to meet the new men at the gate and perform certain other duties in connection with their employment with Tellepson Construction Co. Mr. Glass, who was shop foreman and the plaintiff’s immediate superior, testified that the plaintiff spent fifty percent of his time in his work as steward. Thus, accepting Mr. Glass’ testimony, which is logical, he being the plaintiff’s immediate superior and should know what the plaintiff did, then making ten welds a day was about in line with plaintiff’s productivity prior to the time he was injured. Of course, while the plaintiff worked for Tel-lepson, he did very little climbing and the vast majority of his work was done in the shop and if his inability to climb resulted from his injury, then he would be totally and permanently disabled because he could *816 not do the same kind of work he did prior to the injury. However, from the testimony of the plaintiff, it is apparent that he attributes his inability to climb to the cramping of his left hand. Neither of the doctors was able to associate his complaint of the cramping of his hand with the injury to his finger. As a matter of fact, it was the belief of Dr. Dowell that the three nodules which he found in the palm of the plaintiff’s hand and which were in no way connected with the injury could have caused the cramping.
Thus, for the reasons stated, plaintiff can perform his work as a gas welder or electric welder in the usual and customary way he performed it prior to the injury, insofar as the injury is concerned, and accordingly, the judgment of the District Court will be reversed and plaintiff’s demands rejected at his cost.