LANDRY, Judge.
Plaintiff, John W. Cruthirds, a skilled instrument technician in the employ of Wyan-dotte Chemical Company, instituted this action against his employer’s compensation insurer, Hartford Accident & Indemnity Co., praying for compensation for total permanent disability allegedly resulting from an injury to plaintiff’s left hand. The trial court rejected plaintiff’s demand and plaintiff has appealed.
It is conceded that on February 7, 1961, plaintiff, a skilled technician with approximately 15 years experience, received injury to his left hand in an accident which occurred during the course and within the scope of his employment by his aforenamed employer. The sole issue before the court is whether, as a result of said injury, plaintiff is totally and permanently disabled to perform the duties of such employment in the usual and customary manner without serious impairment of his capacity to perform such work.
In the accident, plaintiff, who is right handed, sustained traumatic injury to the distal ends or phalanges of the left middle (long) and ring fingers necessitating amputation of the terminal phalanx of the left ring finger by surgery performed May 7, 1962.
The gravamen of appellant’s complaint before this court is that the learned trial court erred in failing to find plaintiff permanently and totally disabled by virtue of plaintiff’s inability to perform the duties incumbent upon an instrument technician in the usual and customary manner. In this regard esteemed counsel for appellant maintains the trial court correctly held the test to be applied is that set forth in Scarborough v. Nichols Construction Company, La.App., 110 So.2d 811, but improperly held the Scarborough case to be controlling because, even though the injuries in the instant and Scarborough cases were similar, the duties of the employee in the Scarborough case (a welder) were vastly different from those required of appellant herein. On the other hand, learned counsel for appellee concedes the rule of the Scarborough case to be apropos the case at bar and urges that our brother below correctly found plaintiff has failed to establish that he is unable to perform the duties of instrument technician in the usual and customary manner as he did prior to the accident or that plaintiff’s ability to perform such duties has been seriously impaired.
As stated in the Scarborough case, supra, the issue thusly presented is purely one of fact and each case must, perforce, be decided in the light of its own peculiar facts and circumstances.
We believe the record uncontradict-ed to the effect the duties of an instrument technician require considerable manual dexterity in both hands considering such calling is highly skilled and involves, inter alia, adjustment of tension springs, the tracing of leads, some of which are visible and some not, and the repair and calibration of industrial instruments, large and minute, such as valves, pressure gauges, temperature recording and sensing devices, thermostats and various other similar instruments utilized in present day industry. Predicated upon the testimony as a whole we believe the following excerpt from the testimony of plaintiff’s co-worker, Robert W. Nicholson, an instrument technician, appearing at pages 67-68 of the transcript, accurately and succinctly describes, the degree of dexterity required in the performance of the work in which plaintiff is engaged.
“Q Do you have to have great dexterity with the fingers of both hands to perform these operations?
“A I think that’s one of the requirements. Its certainly a require *588 ment when you’re working with some of the finer instruments. In fact, its necessary to have two full hands, and sometimes you wish you had a couple more when you’re in some of these. For example, if you are working on a Foxborough controller, let’s say you’re putting a new element into a controller, which we very often may have to do, or if we are calibrating these particular instruments they do require that you hold certain parts inside the case while you work with another, or with a screwdriver in another hand. It does certainly require a great deal of dexterity, and all the facilities that God gave you, and you wish you had more.”
Immediately following plaintiff’s injury, plaintiff was seen by Dr. Howard Hansen, General Practitioner, who noted plaintiff had sustained a crushing injury to the distal two phalanges of the left ring and middle fingers with partial amputation of the tufts of both fingers. Upon being advised that plaintiff desired his personal physician to treat the wound, Dr. Hansen did not treat plaintiff but referred plaintiff to the physician of plaintiff’s choice. Since the accident, however, Dr. Hansen, who is employed by plaintiff’s employer, has seen plaintiff on numerous occasions. According to Dr. Hansen, plaintiff has sustained the loss of the terminal phalanx of the left ring finger and anesthesia or loss of the sense of touch beyond the first joint of the left middle finger together with loss of flexion of the middle and ring finger's resulting in loss of grip to the extent plaintiff would have difficulty holding objects less than one inch in diameter. Dr. Hansen is of the opinion plaintiff would find it extremely difficult to apply appreciable pressure against objects less than one inch in diameter and conceded that whereas plaintiff might hold light objects in his left hand, he doubted plaintiff could hold heavy objects or objects as small as an ordinary pencil or smaller. He conceded, however, he was unfamiliar with plaintiff’s duties as instrument technician and could express no opinion regarding plaintiff’s alleged inability to perform the duties of such undertaking and further acknowledged he had not tested plaintiff’s grip recognizing such determination was more properly within the field of orthopedics. When posed a hypothetical question regarding plaintiff’s ability to do fine precision work using the fingers to sense or feel, Dr. Hansen expressed the opinion plaintiff’s ability along this line would be adversely affected by his injuries. He further acknowledged the dexterity of plaintiff’s left hand has been impaired to some extent as was also plaintiff’s ability to use small tools and that the loss of grip noted would also affect plaintiff’s ability to employ small instruments.
Dr. Moss Bannerman, Orthopedist, saw plaintiff approximately one year following the accident. Because of numbness in the left ring finger, Dr. Bannerman recommended .amputation of the distal phalanx which was eventually done in May, 1962. Dr. Bannerman acknowledged the injury produced a slight loss of dexterity and upon examination of plaintiff’s hand in court found evidence of some loss of gripping power on objects less than one-half inch in diameter and obvious indication of atrophy which usually signified either that the hand is not being used sufficiently or has been injured. He estimated plaintiff had sustained 60% disability of his left ring finger resulting from the amputation of the distal phalanx .and approximately 15% loss of use of the middle finger by virtue of the partial loss of sensation of that finger.
Plaintiff was also seen by Dr. F. C. Mc-Mains, Orthopedist, on May 2, 1961, at defendant’s request and again on the date of trial, February 13, 1963. Dr. McMains found plaintiff’s hand somewhat improved on the date of trial. He noted on the latter examination the stump of the ring finger appeared well healed with full range of motion in the interphalangeal joint. The long or middle, finger was found to enjoy only 10 to 15 degrees of motion in the distal inter- *589 phalangeal joint accompanied by loss of sensation over the distal two-thirds of this finger. He agreed with Doctors Hansen and Bannerman that plaintiff’s grip was affected insofar as concerned his ability to hold and tightly grip or squeeze objects of the size of a pencil or smaller. When questioned regarding plaintiff’s ability to use his left hand for the performance of work which involved the sense of touch and the feeling of small nuts and bolts, he expressed the opinion plaintiff’s ability in this regard would to some extent be affected by his injuries. Being unfamiliar with the duties of an instrument technician he was unable to state whether plaintiff was totally and permanently disabled to perform such work.
Plaintiff himself testified the work of an instrument technician frequently consists of fine, exacting precision work requiring full use of as well as considerable manual dexterity in both hands. Although the work does at times involve the repair and maintenance of quite large instruments, it likewise frequently entails repair of minute, delicately calibrated precision instruments constructed in such manner that repairs must be occasionally made “blind”- — that is, by the sense of touch alone. In this regard, it .is clear that some of the instruments which must be repaired are so constructed that only the hands can be inserted therein to make the necessary corrections. In the performance of his work plaintiff is required to use small precision tools such as miniature screwdrivers and wrenches which latter tools, the record reveals, are sometimes as small as one inch in length and Ys inch in thickness. According to plaintiff, he is seriously handicapped in the use of such small tools and particularly so when called upon to repair control valves, DP cells, temperature recorders and pressure units, all of which are delicate instruments. Plaintiff stated he has lost the ability to grip small tools. He further testified he has managed to do his work only by dint of extra effort, application and determination and concedes the quality of work completed has not diminished but acknowledges a decrease in the volume of work he turns out. In particular, he has noted a diminished ability to maintain tension on tension screws and wires which must be installed in certain instruments. Additionally, because of the impairment in his grip he has difficulty holding a small wrench in his left hand when he is required to use such a tool in his left hand to undo a locked nut.
Paul E. Miller, plaintiff’s immediate superior, testified in essence plaintiff has performed all work assigned to him since the accident and he has found no fault with the quality or quantity of plaintiff’s work. He further stated plaintiff has never complained of inability to do his work and has never asked for assistance excepting instances in which assistance is normally required. According to Miller, the bulk of an instrument technician’s work in the caustic area deals with larger instruments and consists primarily in combatting corrosion of instruments by rust removal and painting to minimize corrosion. He conceded, however, that even in the caustic area there is some measure of fine, delicate precision work to be performed although this constitutes only a small part of the technician’s job in the caustic division. Likewise, Miller acknowledged that the repair of small, delicate instruments would now take plaintiff longer to perform. He felt, however, that plaintiff’s overall efficiency was not materially or substantially impaired.
C. J. Harrington, plaintiff’s co-employee, testified he also was an instrument technician and had known plaintiff for several years. He had not been assigned to the caustic area where plaintiff was employed but traveled around to any unit of the plant where extra instrument men were needed. On numerous occasions he observed plaintiff following the accident and observed that plaintiff usually let Morgan do most of the fine work although he conceded he was not sure whether plaintiff did so through necessity or in an effort to teach Morgan about instruments. From his experience as an instrument man he expressed *590 the opinion it was more difficult for plaintiff to perform some of his duties following the accident especially those which required work dependent upon the sense of feeling in one’s fingers.
Able counsel for appellee argues plaintiff is capable of performing all duties incumbent upon him because work in the caustic division entails primarily rust removal and painting which activity accounts for about 90 per cent of the technician’s time with only the remaining 10 per cent being consumed in the performance of delicate, precision work. In this connection, however, it appears that in other areas or sections the percentage of the technician’s time spent in the performance of fine, delicate instrument work is vastly greater. For example, in the glycol division approximately one-half the technician’s time is spent in the calibrating, adjustment and repair of delicate instruments. It further appears that prior to plaintiff’s injury it was the policy of management to revolve or rotate technicians from one area, section or division of the plant to another at approximately six months intervals. However, at about the time of plaintiff’s injury, the system of rotation was changed and assignments of technicians commenced on a-two year basis with teams of two technicians being assigned to each area and one man being changed at the end of the first year and thereafter each member of each team being changed as he attained two years service in the area or division.
The record shows plaintiff was transferred to the caustic division shortly before the accident and has been continuously employed in that department since his injury. Plaintiff concedes he was usually assigned the responsibility of training apprentice technicians and for approximately the last year and a half he has been assigned one Morgan as a trainee. Plaintiff has not been changed from the caustic area since the accident. Plaintiff acknowledges he has never refused to perform an assigned task or informed his employer he was unable to do any phase of the work but rather has stuck to any assigned duty until he accomplished the work regardless of the length of time required. In essence plaintiff contends he has been able to do the work required only by virtue of his extra effort and determination and with the aid and assistance of Morgan who performs most of the delicate work under plaintiff’s close guidance and supervision.
The record before us leaves not the slightest doubt but that an instrument technician is expected to perform the duties of his calling throughout the entire plant whenever called upon by his employer to do so. In this regard, the record is un-refuted to the effect that once every two. months he must serve a week end of “stand by duty” which means he is subject to call for service in any part of his employer’s plant. On one such tour of duty plaintiff was called upon to repair a broken violin string on an L & H (which the record reveals to be some sort of temperature recording device). Plaintiff related he required approximately four hours with the aid of two helpers to perform the necessary repair whereas formerly he could make such a change in approximately forty-five minutes, unassisted. In substance, plaintiff testified the longer period required resulted from the difficulty he experienced in maintaining proper tension on the violin string which had to be held in the left hand during the installation process. Plaintiff acknowledged he experienced little, if any, difficulty in handling large instruments but that in servicing finely calibrated and delicately balanced instruments it frequently took him two or three times longer since the accident and injury to his left hand. Moreover, the loss of sensation in plaintiff’s middle finger is so extensive that on one occasion he cut his middle finger while working inside an instrument and was unaware of the mishap until he withdrew his hand and observed blood on his finger. We believe the record fairly establishes plaintiff is incapable of performing the duties of technician in each and every department of the plant, especially the glycol area where- *591 ■delicate work is shown to consume approximately 50% of the technician’s time, with the same degree of efficiency and dexterity as he could prior to the accident. We further believe the record as a whole establishes a serious impairment of plaintiff’s ability to perform the duties of his calling in the usual and customary manner.
Astute counsel for appellee argues there is no substantiation in the record for the ■conclusion that plaintiff is disabled because each of the three medical experts who testified herein expressed the opinion they could not state whether or not plaintiff was disabled because they were unfamiliar with the nature of plaintiff’s duties. Admittedly the experts so testified but it must also be remembered that each further testified as to the loss of sensation in plaintiff’s middle finger, the impairment of his grip, and the loss of flexion in the middle finger which makes it difficult, if not impossible, for plaintiff to tightly hold, squeeze or apply pressure to small tools or instruments. We ■deem of particular significance the atrophy of the hand noted by Dr. Bannerman.
Granting the injuries in the present case .are similar to those sustained by the employee involved in the Scarborough case, supra, as found by our learned brother below, nevertheless, we conclude our esteemed colleague erred in analogizing the effects of plaintiff’s injuries to those of Scarborough by failing to distinguish between the nature and character of the duties incumbent upon "the employee involved in the cited case as differentiated from those performed by plaintiff herein.
Our careful analysis of the Scarborough ■case reveals it was decided in the light of its own peculiar facts and circumstances. The employee, a welder, sustained an injury necessitating amputation of the left ring finger necessitating eventual amputation through the proximal portion of 1 the middle phalanx. The court found the injury to the finger (and to the hand) was not such as it impaired the employee’s ability to perform his duties in the usual and customary manner because the sole function of the left hand in welding is to hold the welding rod and feed it into the flame of the torch, the rods generally consisting of a metal rod approximately three feet in length and varying in diameter from %2 to 14 inch.
Astute counsel for defendant maintains plaintiff cannot be deemed totally and permanently disabled in view of plaintiff’s admission he is presently receiving wages in excess of those paid him at the time of the accident. The applicable test, however, is not plaintiff’s earning capacity but rather whether plaintiff is able to perform the duties of his occupation in the usual and customary manner.
In the case at bar we are concerned with an employee whose work is highly skilled and whose normal and usual duties require work of a delicate nature involving coordination of the senses of sight and touch. It further appears plaintiff’s duties are such that in performing the delicate repairs and adjustments required he must have the constant use of two good hands 'which possess not only a fine sense of touch or feeling but also manual dexterity to such extent as .will enable him to readily employ, handle and manipulate miniature tools. This, we believe, the record shows, plaintiff is unable to do in the usual and customary manner.
■ Plaintiff’s claim for medical expense is unsupported by any evidence whatsoever and accordingly must be disallowed.
Under the circumstances herein shown defendant’s failure to pay compensation cannot be considered arbitrary or unreasonable and plaintiff’s demand for statutory penalties and attorney’s fees is therefore denied.
Under the circumstances existing herein defendant is entitled to credit for compensation paid as well as for credit for one week’s compensation for each week during which plaintiff has been previously paid or is hereafter paid wages by his employer in an amount equal to or in excess *592 of compensation due. Daigle v. Higgins Industries, La.App., 29 So.2d 374; Schum v. Marion T. Fannaly, Inc., La.App., 59 So.2d 135; Beloney v. General Electric Supply Co., La.App., 103 So.2d 491.
Plaintiff, having prevailed on the main demand is entitled to have the fees of his expert witnesses taxed as costs. We believe that a fee of $100.00 for each of the two orthopedic specialists and $75.00 for the general practitioner who appeared on plaintiff’s behalf, will adequately compensate said witnesses for their services and hereby fix their fees in said amounts.
Accordingly, it is ordered, adjudged and decreed the judgment of the trial court rejecting and dismissing plaintiff’s demand be and the same is hereby annulled, reversed and set aside and judgment rendered herein in favor of plaintiff, John W- Crut-hirds, and against defendant, Hartford Accident and Indemnity Co., decreeing plaintiff totally and permanently disabled to perform the duties of instrument technician and decreeing said defendant liable to plaintiff for workmen’s compensation benefits at the rate of Thirty-five ($35.00) Dollars per week for four hundred (400) weeks commencing February 7, 1961, with interest at the rate of five (5%) per cent per annum on each weekly installment from due date, until paid, subject to credit for all compensation previously paid and subject to further credit for one week’s compensation during each week in which plaintiff has heretofore received or is hereafter paid, by his employer, Wyandotte Chemical Com■pany, equal to or in excess of the amount of compensation and interest due.
It is further ordered, adjudged and decreed that there be judgment herein fixing the fees of the expert witnesses, Doctors Moss Bannerman and F. C. McMains, in the sum of $100.00 each and those of the expert, Dr. Howard Hansen, in the sum of $75.00, and assessing same as costs in this proceeding, all costs to be paid by defendant, Hartford Accident & Indemnity Co.
Reversed and rendered.