MILLER, Judge.
Plaintiff, Jimmy Payne, sued his former employer, Riverland Hardwood Company, Inc., and its insurer , Liberty Mutual Insurance Co., for workmen’s compensation benefits arising out of an accident which occurred on February 17, 1970. The trial court awarded plaintiff compensation for total and permanent disability, medical expenses, penalties and attorney’s fees of $2,500. On application for new trial, the trial court affirmed its original judgment in all respects. Defendants appealed contending that plaintiff is not totally and permanently disabled and that they were not arbitrary in their determination to pay a percentage disability. We affirm.
Payne was employed by Riverland Hardwood as a laborer on a saw mill “run around” of the conveyors, where timbers are positioned and prepared for re-sawing. *815 Plaintiff’s gloved hand was caught in a gear and his right hand was crushed.
Plaintiff was initially treated by Dr. Phillip P. Guiffre, of Cottonport, who amputated the right little finger at the fifth metacarpal and also amputated the right ring finger at the proximal end of the proximal phalanx. Payne entered the Cot-tonport Hospital on February 17, 1970, and was discharged on February 25, 1970. Dr. Guiffre indicated that further treatment was necessary and his disability factor was “undetermined”. Riverland Hardwood next referred Payne to Dr. J. W. Plauche, general practitioner, for evaluation. In his report Dr. J. W. Plauche stated that only an orthopedic surgeon could accurately make this evaluation and recommended referral to Dr. Herbert K. Plauche, orthopedic surgeon of Baton Rouge.
Dr. Herbert K. Plauche examined Payne on June 12, 1970, and rendered a written report addressed to plaintiff’s attorney by letter dated June 24, 1970. Dr. Herbert K. Plauche stated that in his opinion “this gentleman has suffered a disability of 40% permanent loss of physical function of the right hand”. Dr. Plauche stated that this right-handed patient’s “most severe disability to the right hand, has been not only the loss of the 5th finger and the major portion of the 4th finger, but also the lack of complete extension of the index and long fingers and weakening of the grip in the right-hand.” He concluded that this was “probably secondary to scarring in the flexor tendon sheaths of the index and long fingers in the palm”. The letter made no reference to whether Payne was or was not able to return to work.
Defendants referred Payne to Dr. T. E. Banks, orthopedic surgeon of Alexandria, who examined him on September 30, 1970, the day before trial. In a report, dated October 8, 1970, and directed to defendants’ counsel, Dr. Banks found that Payne had a 30% disability of the right hand.
Plaintiff admittedly has suffered a partial permanent disability of the right hand and compensation was and is being paid on that basis. The issues are twofold: (1) Is plaintiff totally and permanently disabled? (2) Are defendants liable for penalties and attorney’s fees?
Dr. Herbert K. Plauche testified that plaintiff’s little finger was amputated at the metacarpal phalangeal joint, which is more commonly described as the knuckle of the little finger where the finger joins the palm. Plaintiff’s fourth finger, ring finger, was amputated at a level slightly proximal to the proximal interphalangeal joint, which is the next joint up the finger from the first knuckle of the fourth finger. In addition, the fourth finger had a fixed flexion estimated at 80°. The third, or long finger, had a fixed flexion of 30° and the second, or index finger, had a fixed flexion estimated at 70°, both at the metacarpal phalangeal joint level. There were no deformities or abnormalities of the thumb, according to Dr. Plauche. Dr. Plauche also testified that plaintiff had incurred a considerable amount of scarring to his right hand.
It was Dr. Plauche’s opinion that plaintiff would have a significant degree of difficulty in doing the type work he had done before. He said he would have difficulty handling more than 25 or 30 pounds with the injured hand. He also felt that plaintiff would experience pain when his hand was subjected to any degree of stress. Under cross-examination Dr. Plauche stated that Payne would have difficulty in loading rough pieces of lumber on a moving conveyor belt and that he would have discomfort in this hand. Dr. Plauche’s testimony indicated the hand would not improve, and that further surgery would not be advisable.
Plaintiff was examined by Dr. T. E. Banks at the request of defendants on September 30, 1970. Dr. Banks, an orthopedic surgeon, testified that plaintiff’s hand was 70% functional or that he had a disability of 30% as opposed to the 40% rating given by Dr. Herbert K. Plauche. Dr. Banks *816 concluded that there was little, if any, pain factor, although this conclusion was apparently based upon the fact that Dr. Banks believed that plaintiff had over reacted to the touching of his hand. Dr. Banks concluded that plaintiff was expressing more pain than he actually experienced. Dr. Banks also found that the skin in the palm of the right hand was tough and gave evidence of having been used. Upon being questioned as to whether plaintiff could go back and accomplish the same type work, Dr. Banks indicated that he would be in a better position to make this assessment if plaintiff had been more cooperative. Dr. Banks concluded that plaintiff could handle effectively, and with little or no pain, the smaller timbers involved in his work, but would probably have some difficulty handling large timbers. He stated plaintiff could close his hand but had difficulty in opening it since the ring finger could be opened to 140° as opposed to a normal opening of 180°.
The lay testimony, including that given by Riverland Hardwood’s employees, preponderated to the effect that plaintiff was unable to perform heavy manual labor of the type done prior to the accident. Most persuasive was the testimony of defendant Riverland’s superintendent who testified he would not hire a man having deformities comparable to those of Payne’s right hand.
We agree with the holding that plaintiff is totally and permanently disabled.
The question of penalties and attorney’s fees is a close question and we are indebted to the trial judge for a thorough analysis of this problem, to wit:
“Here, defendants, on the basis of a doctor’s opinion, fixing a percentage disability on plaintiff’s right hand, on its own, decided to cut compensation payments on this percentage disability. The doctors had not said he could return to his former employ; he was not offered his former employ; the Court heard the evidence as to what his work was, which defendants knew, and the Court was convinced beyond a doubt, factually, that with this admitted percentage disability, he could no longer do the work he was doing at the time of his injury. The Court saw the man, saw his hand, its glaring deformity, its grip, and these facts were known to defendants, the employer, the adjuster, the doctors and the fact that he had done no work for pay since his injury. In the Court’s mind, defendants’ cutting payments, proportionate to his percentage disability, was an arbitrary and capricious act, since there was no medical evidence or lay evidence that he could resume his former occupation or in fact do any heavy manual labor. He is strictly a laborer; he has no education at all.
“The following cases are cited by defendants to support the view that the Court erred in allowing penalties and attorney’s fees, even with its conclusion that he was permanently and totally disabled.
(1) Duplantes [Duplantis] v. Highlands Ins. Co. [La.App.], 221 So.2d 623
(2) Occhipinti v. Marquette Cas. Co. [La.App.], 158 So.2d 389
(3) Thomas v. Gates [La.App.], 157 So.2d 263
(4) Cruthirds v. Hartford Acc. & Ind. Co. [La.App.], 159 So.2d 586
“In the first case cited, plaintiff was actually working each time the payments were stopped. This is not true here; plaintiff has not been employed in any capacity since his injury. In the second case, plaintiff was fully employed even when the suit came up, but in a supervisory capacity, and highly debatable whether he was disabled or not; he had a technical skill of maintenance and repair of machinery. These facts have no similarity to that of the case before the Court. In the third case, on the facts presented, the trial judge denied the penalties and attorney’s fees. There was a genuine issue of fact; the trial judge *817 concluded against the penalties and attorney’s fees. This was affirmed on appeal. Here, there is no dispute on the facts. His heavy labor was never denied; his illiteracy; his percentage disability; no evidence that he was in fact working or could do heavy work. In the fourth case, plaintiff had obtained and was doing other employment which paid him more than that which he earned at the time of his injury; this with the factual issues in dispute; in fact, the trial judge denied compensation benefits. The Appellate Court reversed; awarded compensation, but refused penalties and attorney’s fees.
“A study of the cases cited, shows no valid reason or basis for the Court to change its prior decision (awarding penalties and attorney’s fees) in this matter.”
We find no manifest error in the award of penalties and attorney’s fees.
The judgment of the trial court is affirmed. Costs are taxed to defendants appellants.
Affirmed.