FRUGÉ, Judge.
This is a workman’s suit for compensation arising from an accident occurring during the course of his employment which rendered him totally and permanently disabled. The defendants have appealed from an adverse judgment. We affirm.
The issues presented are: (1) whether an accident occurred, and (2) whether plaintiff is totally and permanently disabled.
The accident occurred on September 16, 1965, when the plaintiff slipped and injured his back while lifting a crate of peppers onto a carrier with the assistance of another employee. These crates weigh from 35-50 pounds. There is some dispute whether an accident really occurred. The kind of accident involved was not one of a violent nature which could be easily observed nor which would produce flagrant visual signs.
What gives rise to defendants’ contention that plaintiff did not receive the accident he complains of is the fact that the testimony of the other employee who was handling the crate of peppers with the plaintiff is vague and uncertain about the occurrence of the incident. He testified that he did not witness the accident, yet he is the one who went to see the foreman for a replacement for plaintiff.
There is no dispute that plaintiff complained to his foreman immediately after he claims he received his injury, and that he was put on lighter duty, where he was not required to do any lifting for two days before he was referred to a doctor for medical treatment. There can likewise be no dispute that the doctor found an injury that he classified as a lumbosacral sprain. All of these facts indicate that an accident did occur.
The most significant controversy produced at the trial was whether plaintiff suffered a disc injury or only a lumbo-sacral sprain. The most disparaging and most difficult testimony to reconcile on this point is that of the doctors. Six doctors examined or treated the plaintiff following his injury. Four of them found no disc involvement. Two of them did.
The first physician to examine and treat the plaintiff following the accident is Dr. G. Douglas Sagrera of New Iberia. He saw plaintiff two days after the accident. X-rays were taken of plaintiff’s back. They were negative for fracture or disc involvement. The doctor diagnosed plaintiff’s injury as an acute lumbosacral sprain and treated him for it until the latter part of November, a period of ten weeks. Dr. Sagrera then believed that Mr. Broussard could do light work at the end of December, 1965, or by the middle of January, 1966.
The next doctor to examine and treat Mr. Broussard was Dr. D. E. Bourgeois, also of New Iberia. Dr. Bourgeois first saw the plaintiff on October 25, 1965, about five weeks after the accident. Dr. Bourgeois used the x-rays that Dr. Sa-grera had taken and, after examining them, came to the same conclusion as did Dr. Sagrera, that plaintiff had suffered a sprain of his low back. Dr. Bourgeois saw plaintiff four times; the last time was November 15, two months after the accident. During this time he found that Mr. Brous- *82 sard had improved considerably and could return to light work.
On November 2, 1965, about six weeks after the accident and again on March 28, 1966, Mr. Broussard was seen by Dr. Fred C. Webre, an orthopedist of Lafayette. Dr. Webre had x-rays taken of Mr. Brous-sard’s back and found them to be negative except for some spurring which was compatible with his age.
At that time Mr. Broussard was complaining about numbness from his waist down to his toes on his right side. The doctor could not confirm the complaint by his examination, nor could he find any reason for it. Mr. Broussard’s complaints were the same on his second visit and the doctor’s findings were the same. The only abnormality that the doctor found was a minimal amount of atrophy in plaintiff’s leg.
One of the reasons why Dr. Webre was not convinced that Mr. Broussard was actually suffering from numbness in his lower extremity is that if it were so, he would drag his leg. But this was not the case.
The fourth • doctor to examine or treat plaintiff is Dr. Homer D. Kirgis, a neurosurgeon of New Orleans. Re saw Mr. Broussard on March 25, 1966, and again on March 10, 1967, approximately one year later.
Plaintiff’s complaint to the doctor was pain in his lower back and in his right leg. The doctor found, through the x-rays he had taken, a moderate narrowing of the lumbosacral disc and some spurring. From these, and other tests, he was of the opinion that plaintiff suffered a ruptured disc at this level and that this injury was the cause of his complaints.
On his second examination a year later, the doctor found substantially the same condition, but also that the patient had improved to the extent that he was less uncomfortable.
On the first examination Dr. Kirgis was of the firm opinion that the ruptured disc should be removed surgically. But because the patient had improved in the year that followed, he saw some hope of re-establishing plaintiff without the necessity of an operation. He believed that if plaintiff continued to improve at the same rate, in about six to nine months he could do light work and in fifteen to eighteen months, if the improvement continued, he could do his regular work. But that was contingent upon a prognosis of continued improvement and no further aggravation of the injury-
On July 22, 1966, approximately ten months after the accident, plaintiff saw Dr. J. Boring Montgomery, a general practitioner of Lafayette. He visited Dr. Montgomery sixty-eight times between that visit and March 13, 1967, principally for heat treatments.
Dr. Montgomery is of the opinion that the plaintiff suffered a ruptured disc. He also had x-rays taken of plaintiff’s back and performed other tests. These convinced him that plaintiff was suffering from the same disc injury that Dr. Kirgis mentioned. He believes that plaintiff is totally and permanently disabled as he is unable to do work of a reasonable character.
The last doctor to see plaintiff was Dr. Joseph M. Edelman, a neurosurgeon of Baton Rouge. He saw plaintiff on November 28, 1966, one year and two months after the accident.
Plaintiff’s complaint was pain in his back, in the lumbar area, and in his left leg. But the doctor could not confirm these complaints by means of the tests he made and the examination of x-rays that he had taken. The doctor was of the opinion that plaintiff was able to do any type of work.
Thus, we have the testimony of Doctors Sagrera, Bourgeois, Webre and Edelman that they are of the opinion that plaintiff is not suffering from a vertebral disc involvement, and the testimony of Doctors Kirgis and Montgomery that he is.
*83 The trial court found that the medical testimony was hopelessly in conflict and referred to the lay testimony to decide the issue of disablement. We cannot say that the trial court was manifestly erroneous. It is an elementary principle that in a workman’s compensation case a decision is not permitted on a finding that a majority of experts concur in a diagnosis. Bean v. Higgins, Inc., 230 La. 211, 88 So.2d 30 (1956). Also, we do not think that the trial court was in error as urged by the appellant for not attempting to apply other rules commonly applied to conflicting testimony of medical experts. We find no solace in those rules in this case.
It is a well recognized rule within our jurisprudence that in the event there is an unresolvable conflict of medical testimony on a medical question it is proper for the court to give serious consideration to the testimony of lay witnesses. Rutherford v. Frost Lumber Industries, Inc., 57 So.2d 914 (La.App. 2nd Cir., 1952); Vidrine v. Employers Mutual Liability Insurance Company of Wisconsin, 103 So.2d 292 (La.App. 1st Cir., 1958); Blanchard v. Travelers Insurance Co., 121 So.2d 515 (La.App. 1st Cir., 1960).
The lay testimony, favorable to the plaintiff, leaves little doubt that the plaintiff is constantly in physical pain and has not worked or been able to do even small chores since the date of his accident. Some of his neighbors and close acquaintances testified that he constantly complains of pain in his back and his leg. He walks with a limp and for only short distances. He has difficulty in sitting and arising. He cannot stay in any position for an appreciable length of time.
His condition demonstrates that the injury he received has totally disabled him. And, having the testimony of two doctors to support it medically, whose opinions are based in part upon objective findings, we think the trial judge was imminently correct in his decision.
There is very little merit to the adverse testimony produced by the defendant through the testimony of some detectives and motion picture films that they took of the plaintiff. The testimony of the detectives only covers a period of brief observation, and neither does their testimony or the film portray plaintiff performing any act of physical activity that he contends his condition does not permit him to do.
It is obvious that the observation of the persons who live near him and who have observed him daily for several years is entitled to much more weight than that of the detectives.
Further, it is not possible to overlook plaintiff’s disabled condition and reject the testimony of Doctors Kirgis and Montgomery that is compatible with it, to accept the opinions of the other doctors that do not appear to be realistic with the lay testimony.
The plaintiff-appellee is also seeking penalties and attorney’s fees on the grounds that defendants’ failure to pay workmen’s compensation to the plaintiff was arbitrary and capricious.
The evidence clearly shows that defendant-appellant’s failure to compensate the plaintiff was not arbitrary and capricious, as it had the testimony of several doctors to the effect that plaintiff’s injury was only a sprain, and that he had recovered sufficiently to return to work. Under these conditions, defendants’ decision to terminate the payment of compensation was clearly not arbitrary or capricious.
For the foregoing reasons, the judgment appealed from is affirmed; the appellant to pay the costs.
Affirmed.