293 So.2d 617 (1974)
Elaine JOHNSON, Plaintiff and Appellee,
v.
CAJUN ENTERPRISES et al., Defendants and Appellants.
No. 4493.
Court of Appeal of Louisiana, Third Circuit.
April 17, 1974.
Rehearing Denied May 14, 1974.
*618 Walter M. Hunter, Jr., Alexandria, for defendants and appellants.
Gold, Hall, Hammill & Little, by James D. Davis, Alexandria, for plaintiff and appellee.
Before FRUGE, MILLER and DOMENGEAUX, JJ.
DOMENGEAUX, Judge.
This is a workmen's compensation suit instituted by Mrs. Elaine Johnson against her former employer, Cajun Kraft Furniture Manufacturing Co. of Rapides Parish, and its insurer, Rockwood Insurance Co. Judgment was rendered by the trial court in favor of the plaintiff and against the defendants for total and permanent disability benefits at the rate of $41.44 per week, not to exceed five hundred weeks from the date of injury, together with all medical expenses related thereto. Subsequently defendants applied for a new trial which was denied and this appeal was thereafter perfected.
*619 On May 2, 1972, the plaintiff herein was employed by the defendant as a commercial seamstress, her duties consisting primarily of operating a heavy duty electric sewing machine. On said date at approximately 2 P.M. Mrs. Johnson was attempting to remove a roll of material which was stacked on a rack slightly above her head by standing on a pile of debris consisting of rubber foam pads and scraps of Naugahyde material. As a result she lost her balance, slipped, and fell against a metal framed cutting table with an iron rod attached thereto, thereby striking the area of her lower back and right hip.
Shortly thereafter plaintiff found herself in great pain and unable to return to her duties so she was forced to leave the job and go home. Her husband thereupon took her to the Hair-Carleton medical clinic in Lecompte, Louisiana. She was subsequently hospitalized for approximately four days and treated with heat and bed rest for possible muscle spasms.
On May 17th Mrs. Johnson was examined by her family physician, Dr. David Carleton, a general practitioner and partner in the medical clinic, who found her still complaining of pain and tenderness in the area of the right gluteus muscle or buttocks. Her diagnosis was possible contusion or bruising of muscles in the right lumbar area.
The plaintiff thereafter continued to express complaints of pain and Doctor Carleton, unable to explain her problem or the reason for no improvement, referred her to Dr. John T. Weiss, an Alexandria orthopaedic surgeon, for consultation. She was examined on May 19, 1972, by Doctor Weiss and x-rays were also taken. Her complaints of pain were still limited to the lower lumbar region and sacrum. The doctor also found acute tenderness over the sacrum, that plaintiff's pains became worse upon sitting, and that Mrs. Johnson was quite emotional. She was again examined on May 26 and given several exercise or motion tests, including straight leg raising and hip flexion with knees flexed, which both brought complaints of discomfort. Doctor Weiss stated that both tests stretched the sciatic nerve, which runs down the back of the leg supplying the muscles of the leg, thigh, and foot. At that time Doctor Weiss felt the plaintiff could be suffering from an inflammatory reaction of the lining in her right hip joint (synovitis) or possibly from a mild contusion of the sciatic nerve. Because of the amount and unusualness of plaintiff's complaints of pain, Doctor Weiss thereafter admitted her to St. Francis Cabrini hospital on May 27th, hoping that traction might give him some idea as to the cause of her pain. Leg and pelvic traction were both administered but without any relief of the pain. On June 5th a myelogram was given which turned out negative. During the plaintiff's two week hospital stay Doctor Weiss also consulted with a gynecologist, Dr. T. G. Easterling, and a psychiatrist, Dr. W. S. Easterling, the latter finding no significant emotional difficulty. Doctor Weiss, however, felt that Mrs. Johnson displayed quite a marked emotional reaction throughout his examinations.
The plaintiff was discharged from the hospital on June 9th on muscle relaxant tranquilizers and analgesics. She was continuing, however, to complain bitterly of pain in her lower back, radiating down her right leg, so Doctor Weiss referred her to Dr. John Jackson, a New Orleans neurosurgeon who saw her on June 27, 1972. He found definite pain on an anterious lateral flexion of the lumbar spine and a quick flexion of the cervical spine which radiated into the right buttock from the lower back. His diagnosis was a possible lateral bulging disc so he decided to do a discogram and hospitalized the plaintiff on July 30th in East Jefferson General Hospital. A lumbar discogram was performed the following day which turned up negative. While in the hospital, Mrs. Johnson was also examined by a vascular surgeon, Dr. Alton Ochsner, Jr., an orthopaedist, Dr. Paul Rodriguez, and a neurologist, Dr. *620 Evan Howell. All examinations were normal. Doctor Jackson further stated that he believed plaintiff's complaints of pain and his final diagnosis was that Mrs. Johnson possibly could have struck her sciatic nerve when she fell and as a result was possibly suffering from a mild traumatic neuritis or contusion at the nerve. He also found her psychologically and mentally depressed with a great deal of psychological overlay and suggested she be placed on tranquilizers and mood elevators.
Doctor Weiss again saw plaintiff on August 28th with complaints substantially the same as at the prior visits. His final diagnosis, after considering plaintiff's complaints and the tenderness which he found, was the possibility, which he could not prove, of a contusion type of neuritis of the sciatic nerve but with a marked hyperreactive emotional status or psychosomatic overlay accompanying it. He stated that such an injury was very hard to determine but that regardless of what he administered to the plaintiff, including what he thought might have included an injection of sugar water, she complained bitterly of pain, until she became lethargic from the amount of medication given. He even suggested a future exploratory operation of the area to search for a scar formation, but Mrs. Johnson declined. In conclusion, it was his opinion that during the time period he saw her, Mrs. Johnson was disabled from returning to her former job, but that such disability was due primarily to her emotional condition or depression.
During her visits to the above mentioned physicians plaintiff was also seen intermittently by her family physician, Doctor Carleton, on May 20, 1972, May 28th, September 26th, and several times in January, 1973. It was his opinion that the trauma the plaintiff received caused the pain in her right hip radiating into her right leg and that it was probably due to a sprain in the lumbar area and contusion of the muscle in the gluteal area. He could not, however, account for the length of time plaintiff had been complaining of the pain inasmuch as he felt both the condition he diagnosed, as well as a bruised sciatic nerve should have healed by the time of his latter examinations. He also testified that prior to the accident Mrs. Johnson did in fact have a nervous and depressed condition, for which he had prescribed drugs, but that her depression seemed to have deepened after the accident. Despite his findings Doctor Carleton apparently felt the plaintiff could return to her work in January, 1973, inasmuch as he sent a report stating such to the defendant-employer herein.
Workmen's compensation payments, which had begun shortly after the injury, were therefore terminated by the defendant insurer on January 15, 1973, and plaintiff filed this suit for permanent and total disability benefits.
Plaintiff was thereafter referred by her attorney to Dr. Rufus Craig of Alexandria, a specialist in internal medicine, whom she first saw on September 5, 1972, and later on February 8, 1973. Doctor Craig found minimal tenderness to pressure over the right sciatic notch and was of the opinion that her complaints of pain in the area of the sciatic nerve were real. He felt her symptoms were compatible with damage to the sciatic nerve and that she had a bruise or contusion and probably some scarring in the area, which could only be definitely proven by an operation. In conclusion, Doctor Craig was of the opinion that standing alone, plaintiff's complaints of pain found in the sciatic nerve area and the minimal tenderness which he found indicated that she was disabled from sitting at a sewing machine eight hours a day. However, he also found plaintiff to have chronic anxiety or tension producing musculoskeletal symptoms which accounted for a number of other unrelated complaints she was having at the time.
On her attorney's request plaintiff was also seen by Dr. David Rees, a Lafayette psychiatrist, who examined her on February 15th, April 25th, and May 11, 1973. *621 He felt that Mrs. Johnson had been suffering from reactive depressive neurosis caused by the following factors: (a) her injury and the resulting chronic pain over a long period of time, (b) her frustration due to the inability of the many physicians who examined and treated her to give her any relief, and (c) the state of the family's financial condition since the accident which had been very dependent upon the plaintiff working. Although Doctor Rees did not examine the plaintiff physically, it was his opinion that her neurosis had improved during his treatments and that she was no longer disabled from a psychiatric standpoint alone, but that her present mental condition coupled with her complaints of pain, which the doctor considered truthful, disabled her to return to her former job.
On the request of the defendant-insurer, plaintiff was also examined in Lake Charles on April 3, 1973, by two physicians, an orthopaedist, Dr. Norman Morin, and a psychiatrist, Dr. Gilles Morin.
The orthopaedist came to the conclusion after a 10-20 minute examination that he could find no objective symptoms of residual orthopaedic disability or injury to the sciatic nerve and saw no reason why the plaintiff could not return to work as a seamstress. Yet the plaintiff complained of pain in the right hip often radiating down the back of the right leg and the doctor found tenderness over the mid posterior aspect of the hip as well as pain in the right hip on the straight leg raising test which was aggravated by dorsiflexion of the foot (frequently labelled the sciatic nerve stretch test), which were admittedly all compatible with neuritis of the sciatic nerve.
The psychiatrist found plaintiff to show signs of a mild depressive reaction but no indications of extreme depression. However, he stated that he believed plaintiff to be truthful and had no reason to doubt her complaints of pain, which he felt played only a minimal role in the depression. Although Dr. G. Morin concluded that in his opinion Mrs. Johnson was not disabled from returning to work, he admitted that Doctor Rees was probably in a better position to diagnose her condition since the Lafayette psychiatrist had seen the plaintiff several times.
In addition to the plaintiff herself, several lay witnesses testified on her behalf, including neighbors, friends, and her husband. All stated that plaintiff complained of pain in her back and leg since the accident, several testifying to seeing her even break down in tears. Don Johnson, plaintiff's husband, testified that before the accident his wife worked several hours at night in their home making ladies handbags for sale on a commercial sewing machine. He stated that after the accident she could not sew on the machine for any length of time in addition to being unable to carry heavy loads, move large pieces of furniture, or bend over to clean under the beds.
The defendants cite the following specifications of error on the part of the trial judge:
(1) in finding that plaintiff was permanently and totally disabled thereby entitling her to continuing compensation benefits,
(2) in considering lay testimony and giving weight to hearsay complaints of pain by plaintiff to these lay witnesses,
(3) in awarding medical expenses when no medical expenses were proven,
(4) in refusing to grant defendants a new trial and re-open the testimony.
The district judge, in written reasons, found the plaintiff "totally disabled at the time of trial ... to perform the strenuous duties of a furniture seamstress". In his opinion the weight of the medical testimony, although conflicting, preponderates "in favor of the conclusion that the plaintiff suffered an injury to the *622 sciatic nerve in the area of the sciatic notch in the right hip and that her condition was aggravated by the subsequent development of a depressive neurosis". We find no manifest error in his conclusion.
In summary, Dr. Rufus Craig was of the opinion that plaintiff's complaints were due to damage to the sciatic nerve resulting from her injury. Dr. John Weiss could find no other reason for plaintiff's pain, except for a possible mild traumatic neuritis or contusion of the sciatic nerve. The other testifying physicians, apart from the psychiatrists, all admitted that plaintiff's complaints were compatible with an injury to the sciatic nerve, even though they enunciated other possible reasons for the problems. It was readily admitted that the x-rays taken as well as the myelogram and discogram performed would not show whether plaintiff had an injury to the sciatic nerve, the only sure way being an exploratory operation. In addition, all apparently believed plaintiff's complaints of pain, although some were of the opinion that they were out of proportion to the objective findings due to her mental state.
Practically all of the physicians also mentioned in their testimony of plaintiff being in a state of mental depression. Dr. David Rees, the psychiatrist testifying on behalf of the plaintiff, was of the opinion that she suffered from extreme depressive neurosis for a period of time but had improved considerably during his treatment. Dr. Gilles Morin, the defendant's psychiatric witness, was of the opinion that plaintiff showed mild depressive reaction. Her family physician stated she had been depressed prior to her injury but that afterwards her depression seemed to have deepened.
As to her disability, Doctor Craig felt plaintiff was unable to attend to the duties required of a seamstress, constantly sitting at a sewing machine for an eight-hour day, because such a position would stretch the sciatic nerve causing her pain. Doctor Rees felt her mild depressive neurosis coupled with her pain would disable her from working as a seamstress. Doctor Weiss considered the plaintiff disabled to work during the time he saw her if one combined her emotional condition with any possible organic problems she might have had. To the contrary, Dr. N. Morin felt, from a physical standpoint, that Mrs. Johnson could return to her work, even though the pain she described was real; he gave no impression as to the mental state of the plaintiff. Dr. G. Morin also felt that plaintiff could return to her duties as a seamstress.
In addition we also note the observations of the trial judge concerning the credibility of the witnesses. "The Court was impressed by the apparent sincereness and truthfulness of plaintiff's testimony and the testimony of her lay witnesses, which also supports the above findings."
As this Court has stated before in Reason v. Joan of Arc Co., 285 So.2d 332 (La.App. 3rd Cir. 1973), where there is a conflict in medical testimony considerable weight will be given to the testimony of the injured employee. In addition, the findings of facts by the trial court, particularly involving the credibility of the witnesses, are entitled to great weight on appeal.
Accordingly, we find no manifest error on the part of the trial judge in his findings of total and permanent disability on the part of the plaintiff at the time of trial.
Of course, should plaintiff's disability terminate or lessen in the future, the defendant-employer is protected by the provision of the Workmen's Compensation statute (LSA R.S. 23:1331) permitting revision of the judgment after a six month period. Bushnell v. Southern Farm Bureau Casualty Insurance Co., 271 So.2d 267 (La.App. 3rd Cir. 1972).
Defendants' second specification of error concerns the lay testimony elicited at trial. Their first assertion is that the trial judge *623 was wrong in even considering the lay testimony.
Applicable here is the jurisprudential rule that in the event there is an unresolvable conflict of medical testimony it is proper for the court to give serious consideration to the testimony of lay witnesses. Reason v. Joan of Arc Co., supra; Broussard v. Frank Tea and Spice Co., 250 So. 2d 80 (La.App. 3rd Cir. 1971).
Defendants argue such a conflict does not exist, but in light of the testimony hereinabove referred to, we find little merit in such argument. There is definite conflict as to disability, physical injuries, and extent of plaintiff's mental depression. Therefore the trial judge correctly considered the lay testimony.
We note in passing that perhaps the Supreme Court in the recent case of Johnson v. Travelers Ins. Co., La., 284 So.2d 888 (1973), although in dicta, has expressed the intention to throw out the aforementioned jurisprudential rule in regard to lay testimony in favor of a more liberal evidence rule in workmen's compensation cases. However, the Court did not expressly do so and we find the opinion unclear on the point.
In Johnson the appellate court at 271 So.2d 559 (1972), in holding for the defendant-compensation insurer, explicitly stated that the district judge had been correct in refusing to consider lay testimony in the suit to establish the alleged disability, since there was no serious dispute among the medical experts as to plaintiff's condition.
The Supreme Court reversed, holding for the plaintiff, and although no mention was made of any lay testimony the Court reiterated the language found in the earlier Williams v. Hudson East, 261 La. 959, 261 So.2d 629 (1972) case:
"Proof of disability arising by reason of subjective pain must of necessity depend to a great extent upon the trial court's evaluation of the truthfulness of the claimant's complaints in the light of the entire record of medical and lay testimony. (emphasis ours). Thus, a medical estimate of the degree of pain must be evaluated in the context of such entire record, (emphasis ours) and a medical opinion as to whether a permanent disability is partial or total must yield to the legal test thereof."
Arguably one could assume this was intended by our high Court to mean that lay testimony is to be considered regardless of whether any conflict exists in medical testimony. If this interpretation is correct the defendant's specification of error herein in regard to the lay testimony is of course without legal foundation. However, until there is a ruling on point by our Supreme Court, we will continue to apply the heretofore established jurisprudential rule.
Defendants also objected to the lay testimony regarding the statements made by the plaintiff to the witnesses concerning her pain, on the basis that such constituted inadmissable hearsay evidence and self-serving statements. This objection is also without merit in light of LSA-R.S. 23:1317 which enunciates the rule that our courts are not bound by technical rules of evidence in a workmen's compensation suit.
The jurisprudence in such cases is to the effect that hearsay evidence, within discretionary limits, is admissible. Allen v. Milk Haulers, Inc., 278 So.2d 871 (La.App. 1st Cir. 1973); Clifton v. Arnold, 87 So.2d 386 (La.App. 1st Cir. 1956).
Thus there seems to be no reason to exclude such testimony herein inasmuch as the trial judge is very able to determine the weight to be afforded such testimony. This is especially true whenever these so-called "hearsay" statements are corroborated by other evidence such as the records, depositions, and statements of the testifying physicians.
*624 Defendants additionally argue that the district judge was in error in granting plaintiff recovery for "all medical, surgical, and hospital services and treatment and expenses related thereto", insofar as no medical bills, past or future, were proven at trial. We think this argument has merit. There is no dispute that previous medical expenses in the amount of $2,467.47 have been paid by the defendant-insurer. However, as to past unpaid medical expenses the record is devoid of evidence and no award can be made therefore. Green v. Heard Motor Co., 224 La. 1078, 71 So.2d 849 (1954); Giddings v. Coal Operators Casualty Co., 205 So.2d 189 (La. App. 2nd Cir. 1967).
In addition it is clear that future medical expenses are not allowed in workmen's compensation cases unless proven at trial. Igues v. Travelers Ins. Co., 237 So. 2d 895 (La.App. 3rd Cir. 1970); Gisevius v. Jackson Brewing Co., 152 So.2d 231 (La.App. 4th Cir. 1963).
However, the right to assert such claim for future medical expenses, related to the injury herein, if and when incurred, should have been reserved unto plaintiff. Harris v. Argonaut Ins. Co., 142 So.2d 501 (La. App. 2nd Cir. 1962).
Under these circumstances we believe the judgment should be amended to reject plaintiff's demands for medical expenses.
A final argument advanced by the defendants is that the trial judge erred in denying their motion for a new trial. Defendants alleged in their motion that they had discovered since the trial evidence important to the cause which could not with due diligence have been obtained prior to or during the trial. Three affidavits were offered, the first being that of Lloyd Allbright, the defendant-insurer's claim's manager who had already testified at the trial. The other affidavits were by the defendants' attorney himself and Francis Mathews, a manager for the defendant-furniture factory, who was not called to testify at trial. All three affidavits alleged the following evidence had been discovered.
"Evidence showing that the plaintiff in these proceedings has been seen engaging in strenuous activity in no apparent pain and not in any manner showing a limp. Evidence showing that plaintiff bitterly complained of back pain prior to the date of the alleged accident involved in these proceedings and evidence showing that plaintiff took a considerable amount of pain killing medication for these prior episodes of back pain."
It is elementary that the law does not favor a multiplicity of litigation and that a litigant having been afforded his day in court will not be granted a second opportunity in the absence of a good and compelling reason.
After a hearing on the motion the trial judge apparently concluded that with due diligence the evidence could have been available to the defendants at the time of the trial. Hence the grounds urged for a new trial were not peremptory, LSA CCP Art. 1972(2).
However, in his discretion under LSA CCP Art. 1973, he could have still granted the motion but, as is evident by his ruling he found that this was not a proper case to do so. A conclusion on our part that the trial judge abused his wide discretion in refusing a new trial is not justified on the face of the record.
For the above and foregoing reasons the judgment of the trial court is amended by rejecting plaintiff's demands for medical expenses, reserving to her the right to claim such future medical expenses, if and when incurred, and, as thus amended, the judgment is affirmed at defendants-appellants' costs.
Amended and affirmed.
MILLER, J., dissents and assigns written reasons.
*625 MILLER, Judge (concurring in part, dissenting in part).
I agree that this thirty year old claimant proved disability beyond the January 15, 1973 termination of compensation at which time $1,533.28 in benefits and $2,467.47 in medical expenses had been paid by defendants. It is respectfully submitted that the record and particularly the medical testimony does not support a finding that claimant was disabled beyond the May 11, 1973 date her psychiatrist found her able to return to work.
Some six months before the accident, claimant submitted to her second hysterectomy. The first was partial, the second complete. Although claimant could not recall, three witnesses testified that she missed work the week before the accident. When she returned she was extremely nervous. Tr. 247, 254. During the week before the accident, her family physician treated her for crying spells with mood elevators and hormones. Tr. 89. Claimant failed to relate her history of depression prior to the accident and the numerous physicians (all but two of whom were selected by claimant or her physicians or attorneys) based their findings on an incorrect history. Dr. Rees Deposition 21, 35. Dr. Craig, Tr. 58, 9.
The accident was not witnessed although two employees were in the room with claimant at the time. When claimant pointed to the injured area of her body, she pointed to an area above the belt line. Tr. 233, 238, 243, 252. None of the physicians found objective signs of a bruised or contused area. This point becomes relevant when it is noted that claimant was asked by her employer to see the company physician about a week or week and a half after the accident. Claimant refused because an attorney (not counsel of record) "advised me that I did not have to since I was not offered to be taken to the doctor the day of the accident." Tr. 205, 6.
This claimant rejected medication and exercises prescribed by her treating physicians. She was told that it was important that she wear special shoes because one leg was shorter than the other, but wore prescription shoes only part time. 211, 2. She quit taking medication prescribed by her treating psychiatrist, Dr. Rees while the prescribed medicine was on hand. She refused to return to Dr. Rees to meet appointments. Claimant made no effort to see a physician or to take medication for several months prior to trial. Tr. 216, 218. Claimant admitted that from an emotional standpoint she could hold her job. Tr. 217, 8. She testified that pain would prevent her return to work. Tr. 220.
We do not have the benefit of testimony of Dr. Hair, the original treating physician selected by claimant, for she did not call him as a witness. Defendant is entitled to the presumption that his testimony would be adverse to claimant's interest. Blue v. Kenney Company, 256 So.2d 145 (La.App. 3 Cir. 1971). The majority has not sought to explain why the presumption was not applied.
Dr. David Milton Carlton, general practitioner of LeCompte, was claimant's family physician. He saw her on May 17, 20, 28, 1972, and does not suggest that he found a bruised or contused area. He took her subjective complaints and "assumed that the trauma from her fall had caused her symptoms." Tr. 93, 100, 101. Dr. Carlton could not account for claimant's complaints and referred her to Dr. Weiss, an orthopedic surgeon in Alexandria. After receiving negative reports from the numerous consulting physicians, Dr. Carlton discharged claimant to return to work as of January 15, 1973.
Dr. John T. Weiss of Alexandria, testified time and time again that claimant's problem was mainly emotional. As to the exploratory operation, he "told her we could do it, but that I would prefer not to for at least a number of weeks or months to give it time to see what she was going to do." Dep. 25. Dr. Weiss would not have operated because of her emotional status.
*626 The only reason the myelogram was performed was because of claimant's unaccounted for complaints. Dep. 27. Dr. Weiss testified that such a severe injury to the sciatic nerve would cause muscle atrophy below the knee. None was found. Dep. 34. There were no reflex changes. Many of her complaints were inconsistent from a medical standpoint. Dep. 35. "The amount of emotional reaction seemed so out of context with the physical findings that I've given that its very difficult to say how much of it was emotional and how much of it was real." Dep. 40. Dr. Weiss concluded that claimant was disabled based primarily upon her emotional condition. Dep. 41, 2. He referred claimant to Dr. Jackson, neurosurgeon of New Orleans because he could not account for the complaints. Dep. 50.
Dr. John Davies Jackson couldn't account for the complaints. Her clinical findings and discogram were normal. Dep. 13, 4. To make sure, he referred claimant to numerous physicians to try to find some basis for her complaints. She was seen by Dr. Alton Ochsner, Jr., a vascular surgeon, Dr. Raul Rodrigues, an orthopedic surgeon, and Dr. Evan Howell, a neurologist. All found her symptom free, and the suggestion was made that "psychological overlay" was playing some part. Dep. 18. On the basis of claimant's history (that she received a blow in the appropriate area, a fact not established in this record) Dr. Jackson thought that claimant might possibly have "very mild" traumatic neuritis, one from which she should recover in time. Dep. 17. Dr. Jackson concluded: "We couldn't find any real organic reason for her complaining and we had her reevaluated from every possible angle and she was still complaining and we were trying to figure out some reason for it and that (the suggestion that she might have a mild traumatic sciatic neuritis) was the only thing we could postulate as a possibility." Dep. 26. Dr. Jackson concluded that the psychological overlay could have been caused by problems other than the accident. Dep. 27. He prescribed an antidepressing drug (Triavil 4 10) when claimant left his care. Dep. 27.
Claimant's counsel sent her to Dr. Rufus Holt Craig, specialist in internal medicine in Alexandria. He saw her on September 5, 1972 and on February 8, 1973. No objective signs were found. Tr. 45, 46. Based on her complaints he found "her principle problem was one relating to a chronic long standing tension with musculoskeletal symptoms secondary to this. I felt that one of the contributing factors, of course, was the fact that she had had an injury related to her work which had not been resolved." Tr. 43. Dr. Craig testified that he "did not do as extensive an orthopaedic examination or a neurological examination as [a specialist] would." Tr. 48. The pain which claimant described did not follow the course of the sciatic nerve. Tr. 53. Dr. Craig did not know that one of claimant's legs is one-half inch shorter than the other. Tr. 54. Claimant did not tell Dr. Craig of her period of depression following her hysterectomy and immediately prior to the May 2, 1972 accident. Tr. 58, 9. Dr. Craig testified that he has never treated a patient for an injury to the sciatic nerve. Tr. 60. He did not view x-rays, did not perform a sciatic nerve compression test, did not find sensory changes, did not find motor difficulty, did not find muscle atrophy or muscle spasm, and did not find reflex changes. He found her complaints of soreness to be minimal. Tr. 69, 70. Dr. Craig testified that claimant's total hysterectomy at age 29 would require replacement (hormone) therapy for a long period of time. Tr. 80. It's worth noting that claimant took no medication for several months prior to trial.
Claimant's counsel next sent her to Dr. David J. Rees, psychiatrist of Lafayette. He saw claimant on February 15, April 25, and on the day he gave his deposition, May 11, 1973. Dr. Rees testified that "From the history which she gave me and not from an examination, I would say that she is not able to continue her previous employment." Emphasis added. Dep. 15. *627 Dr. Rees made it clear that claimant was not disabled from a psychiatric standpoint as of May 11, 1973. Dep. 16, 17, 18, 27, 33. Claimant's complaints of physical pain were the basis for his conclusion that she was disabled, and he was not in a position to say she was disabled from a physical standpoint. Dep. 17.
Dr. Rees did find claimant disabled from depression on her first two visits. Dep. 22. On that basis I concur in finding compensation due through May 11, 1973.
Defendant's psychiatrist Dr. Gilles Morin of Lake Charles agreed with Dr. Rees that at the time of his examination claimant was able to return to work. Dr. Morin examined claimant after she had been successfully treated by Dr. Rees. Claimant did not call the psychiatrist who examined her at the request of Dr. Weiss, but his report states that no psychiatric disability was found.
There is no medical dispute among the specialists in the field of their specialty. The psychiatrists agree that she had recovered as of May 11, 1973. The neurosurgeons, the orthopedic surgeons, the internal medicine specialists, the general practitioner, all agree that they find no basis for claimant's complaints insofar as their own specialty is concerned.
At a cost to defendant of $2,467.47, this claimant has received treatment from every type specialist that could possibly diagnose and treat her complaints. Not one objective sign of injury was found.
The trial judge's total opinion on the merits consists of the following:
"Considering all testimony concerning plaintiff's condition, it is the opinion of the Court that the plaintiff was totally disabled at the time of the trial and will be totally disabled to perform the strenuous duties of a furniture seamstress, which is the work her training, education, experience and status in life qualify her to perform, for an indefinite futute time.
It would serve no useful purpose to reiterate herein the testimony of the numerous physicians who examined and treated the plaintiff. Unquestionably, this expert testimony was conflicting in many respects. This is not unusual in this type case where the injury complained of manifests few if any objective symptoms. However, the weight of this medical testimony preponderates in favor of the conclusion that the plaintiff suffered an injury to the sciatic nerve in the area of the sciatic notch in the right hip and that her condition was aggravated by the subsequent development of a depressive neurosis. The Court was impressed by the apparent sincereness and truthfulness of plaintiff's testimony and the testimony of her lay witnesses, which also supports the above findings."
I respectfully differ from these conclusions. If claimant suffered a bruise to the sciatic nerve, one of the physicians selected by her or by her attorney or attorneys should have found a bruise or contusion in the appropriate area. None was found. If claimant was sincere and truthful, she should have consented to be examined by a company physician shortly after the injury. She should have told her physicians about her history of crying and depression following her hysterectomy and immediately prior to the May 2, 1972 accident. She should have taken the prescribed medication and exercise.
On Dr. Rees' testimony, the granting of compensation from January 15, 1973 to May 11, 1973 is properly affirmed. It is respectfully submitted that the balance of the judgment should be set aside.